657 So.2d 689 (1995)
Thomas James DOMANGUE
v.
MR. GATTI'S, INC., and State Farm Insurance Company.
No. 93 CA 2392.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
*691 Norval J. Rhodes, Houma, and William S. Culver, Jr., Metairie, for plaintiff-appellant-appellee.
Michael Grennan, New Orleans, for defendants-appellees-appellants, The Travelers Ins. Co. and Lynn Park Shopping Center.
Jerry H. Schwab, Houma, for defendants-appellants-appellees State Farm and Anko Investments.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
SHORTESS, Judge.
Thomas J. Domangue (plaintiff), a paraplegic, was injured on June 17, 1990, on the premises of a Mr. Gatti's Pizza restaurant in Houma, Louisiana, when his wheelchair rolled off the sidewalk and he was thrown into the parking lot. He originally sued Mr. Gatti's Inc., and its insurer, State Farm Fire & Casualty Company[1] (State Farm). He later amended his petition to substitute Anko Investments, Inc. (Anko), for Mr. Gatti's Inc., and to add Lynn Park Shopping Center (Lynn) as a defendant.[2] Anko was the named insured under the State Farm policy, which included Mr. Gatti's and Lynn as additional insureds. State Farm and Anko filed a third party demand seeking indemnification against The Travelers Insurance Company (Travelers), and Travelers and Lynn then cross-claimed against State Farm and Anko.
The case was tried to a jury on the issues of negligence and damages. The jury found that plaintiff, Anko, and Lynn were all negligent and apportioned the fault 35% to plaintiff, 45% to Anko, and 20% to Lynn. Damages were fixed at $100,000.00 for past and future medical expenses, $35,000.00 for past and future physical pain and suffering, and $25,000.00 for past and future mental anguish. The jury awarded no damages for past, present, and future loss of earning capacity.[3]
*692 The cross-claim and third party demand were submitted to the trial court for decision. The court, in brief written reasons, found it was "satisfied that the jury's division of fault... is substantially correct despite the fact that the jury did not try the third party demand." The court stated it adopted the jury's allocation of fault "as dispositive of the Third Party Demand."
Judgment was then rendered by the court in accordance with the verdict on the main demand. The judgment also dismissed the third party demands and cross-claim. Plaintiff's post-trial motions for judgment notwithstanding the verdict, new trial, and additur were denied.
All parties have appealed. Plaintiff contends that the trial court erred in casting him with 35% of the fault, that the damages awarded for pain and suffering, mental anguish, and medical expenses are inadequate, and that the court erred in denying his post-trial motions. State Farm and Anko contend the trial court erred in applying the jury's findings to its third party demand, in dismissing their third party demand, and in awarding future medical expenses to plaintiff.[4] Travelers and Lynn contend the trial court committed an error of law in dismissing its cross-claim and in failing to determine the State Farm policy provided pro rata coverage to Lynn.

LIABILITY
Neither Anko nor Lynn (defendants) has appealed the finding that its fault caused the accident. However, plaintiff contends the fact finder erred in assessing 35% of the fault in this accident to him.
The accident occurred as plaintiff was exiting the premises. The door was hinged so that it opened away from the handicapped ramp. A patron in a wheelchair was required to come through the doorway, go away from the handicapped ramp, allow the door to close, then make a 180-degree turn back toward the handicapped ramp. Plaintiff testified he was approximately three-fourths of the way through the 180-degree turn when he felt a grabbing or twisting of the front wheel on his wheelchair, as if the wheel had hit a rock. However, he was not certain what had caused the accident. His front wheels went off the edge of the sidewalk, which was six inches higher than the parking lot, and he was catapulted forward into the parking lot.
Thomas J. Kinsella, III, the manager of the restaurant at the time of the accident, testified that when he learned of the accident, he went outside and found plaintiff lying in the parking lot. Plaintiff was coherent but complained he was seeing white specks. Kinsella asked him what had happened, and plaintiff said he thought he had hit a rock. Kinsella testified he inspected the sidewalk but found no rocks.
Kinsella reported this to plaintiff, and plaintiff replied that he "must have had" pizza grease on his hands because his hand had slipped off the back wheel. Plaintiff testified, however, that when he thought about the accident later, he realized this could not have been the cause of the accident. He stated his hands could not have been greasy because he had washed them two or three times while in the restaurant, and while his hand did slip off the back wheel, it was only after his front wheels had dropped off the sidewalk.
The parties stipulated that the 1977 American National Standards Institute (ANSI) code applies to this building. That code requires the entranceway to the building to have a substantially level landing which is a minimum of fifty-four inches wide. It is undisputed that the landing is less than forty-eight inches wide and has a slope of greater than twice that allowable under the code. Plaintiff's expert in the design and construction of buildings, Ronald Shaw, testified that these defects contributed to plaintiff's accident. Shaw also opined that other contributing factors were the poor condition of the exposed aggregate surface of the landing and sidewalk, which allows small pieces of rock to break off, and the lack of parking bumpers, *693 which permitted vehicles to overhang the sidewalk, thus blocking plaintiff's access to a portion of the sidewalk with more room for turning.
Defendant's expert architect, Wilbert L. Argus, Jr., admitted the entranceway deviated from the ANSI code but stated the defects did not cause or contribute to plaintiff's accident. He opined that the cause of the accident "had to be something other than the sidewalk per se." However, he offered no suggestion as to what that other cause might have been.
Defendants argued to the jury and in brief that because plaintiff had been to this restaurant on several previous occasions without incident he "must have done something different to contribute to the accident," that the sidewalk could "not have caused the plaintiff's wheelchair to roll out of control without the assistance of the plaintiff," and that the defective condition of the sidewalk was easily observable. However, there was no evidence presented that plaintiff did anything to contribute to the accident, and Kinsella testified that it is not "obvious to the human eye" that the sidewalk is sloped or slanted in any way.
If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 883 (La.1993). Because the appellate court has a constitutional duty to review facts, however, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Dept. Ambulance Serv., 93-3099, 93-3110, 93-3112, p. 6 (La. 7/5/94), 639 So.2d 216.
The jury's finding that plaintiff was contributorily negligent in this case was not a permissible view. Defendants' theories regarding the cause of the accident are pure conjecture with no evidentiary support whatsoever, making the jury's finding that plaintiff was 35% at fault manifestly erroneous. Because the fault assessed must equal 100%, we reapportion fault between Lynn and Anko in the same ratio found by the jury, 20:45. Neither Lynn nor Anko appealed the apportionment of fault between the defendants. Thus, we amend the judgment to apportion fault 30.8% to Lynn and 69.2% to Anko.

QUANTUM
A. Physical Pain and Suffering
Plaintiff contends the trial court abused its discretion in awarding him only $35,000.00 in damages for past and future physical pain and suffering.
Plaintiff was taken by ambulance to the emergency room of Terrebonne General Hospital following the June 17, 1990, accident, where he was treated and released by his family physician, Dr. Thomas H. Givens. Plaintiff saw Givens two days later complaining of "quite some pain" in his left foot. Givens testified the foot was obviously swollen. An x-ray showed an impacted fracture of the fifth metatarsal. Givens placed the foot in a plaster splint. On July 2, Givens examined plaintiff's foot and found a heel blister with early infection caused by his heel rubbing the splint, as well as an infection at the site of the fracture.
On July 13, plaintiff saw his orthopedist, Dr. Christopher Cenac. Cenac found the heel blister had become an ulcer which extended over the top of plaintiff's foot, with exposed infected bone (osteomyelitis) and sepsis. Cenac immediately hospitalized plaintiff for treatment of the heel problems because they were life-threatening. Plaintiff remained in Terrebonne General for thirty-five days, where he underwent three surgeries to remove infected bone and dead tissue and to graft skin from his thigh onto his heel. Dr. O'Neil Engeron, plaintiff's treating plastic and reconstructive surgeon, described the area where the donor skin was removed as resembling "the worst brush burn you ever had." The donor area of plaintiff's thigh is permanently discolored, and plaintiff now has an equinus deformative foot caused by the heel injury.
On plaintiff's July 13 visit to Cenac he also complained of neck and shoulder pain and a sleeping sensation in his hands. An MRI showed a four-millimeter protrusion of two of plaintiff's cervical disks causing compression of the spinal cord. Cenac testified he consuited *694 at great length with Dr. Donald Judice, a neurosurgeon, regarding plaintiff's neck injury. They were concerned because the disk problem could result in paralysis to both of plaintiff's arms, which would leave him a quadriplegic. Neck surgery, which carried a risk of paralysis, could not be performed until plaintiff had recovered from the heel injury, but without surgery progressive weakness would cause plaintiff to lose the use of his arms.
Plaintiff was readmitted to Terrebonne General on October 10, 1990, and underwent removal of the disks and fusion of the vertebrae. He was discharged from the hospital on October 16, 1990, but made many follow-up visits to Cenac. He had reached maximum physical recovery from the spinal surgery by October 1991, but residual neuritis in his spinal cord from the operative procedure caused numbness and weakness in his hands. That inflammation of the spinal cord had resolved by October 1992.
Cenac also treated plaintiff for a traumatic ganglion cyst in the carpal bone of his left wrist, which Cenac stated was caused by plaintiff stretching out his hand in an attempt to catch himself as he fell. Cenac stated that without surgery the cyst would have kept getting larger and more painful, so he surgically removed the cyst in April 1993.
Cenac also testified plaintiff suffered compression of the ulnar nerve of the left elbow in the accident. He recommended ulnar nerve transposition surgery, which was scheduled to be performed the week after the trial. During the six- to eight-week recovery period, plaintiff would be unable to operate his wheelchair. While he could not state unequivocally that the ulnar nerve problem was caused solely by the accident, based on the history given by plaintiff he found it to be causally related.
The correct standard for appellate review of a damage award is clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). In reviewing a damage award, we must review the evidence in the light which most favorably supports the judgment and make an articulated analysis of the facts and circumstances peculiar to the plaintiff's case. If that analysis discloses an abuse of discretion, i.e., that the award is below that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, we may raise the award only to the lowest amount reasonably within the trier of fact's discretion. Theriot, 625 So.2d at 1340-1343.
We find the amount awarded to plaintiff for pain and suffering, past and future, is grossly inadequate and an abuse of the jury's much discretion. Because plaintiff is a paraplegic, he did not feel the same type of pain in his heel that a non-paralyzed person would. However, the autonomic nervous system in his lower body still functions, and the feelings of pain in his neck and arms are unaffected by his paraplegia. He underwent five surgeries and had another scheduled at the time of trial, has permanent disfigurement of his foot and permanent scarring of his thigh, and has had two neck vertebrae fused. He lost all mobility during the time of his hospitalizations and recuperation from arm surgery; during his recovery from the scheduled surgery, he would be unable to use his wheelchair. The lowest amount reasonably within the trier of fact's discretion is $200,000.00, and thus the judgment must be amended accordingly.

B. Mental Anguish
Plaintiff contends the trial court abused its discretion in awarding him only $25,000.00 in damages for past and future mental anguish.
Plaintiff suffered from clinical depression following the 1979 accident which rendered him a paraplegic. He had recovered fairly well, however, and a few days before the accident had taken steps to enroll in college under the state vocational rehabilitation program. He had also achieved regulation of bowels and bladder so that he felt confident enough to go out in public, and he enjoyed bass fishing from his boat and playing wheelchair basketball.
Plaintiff's injuries prevented him from enrolling in college as he had planned, which caused him distress. His fishing is now limited to bayou-side, and he does not play *695 basketball for fear of causing further damage to his neck.
Plaintiff testified that when he began to experience numbness in his arms and was diagnosed with herniated cervical disks, he was "terrified" of losing the use of his arms and did not sleep for three days. He had fears of becoming a quadriplegic and being placed in an institution and began to experience recurrent nightmares. He began to have insomnia, erratic changes in appetite, moodiness, sexual dysfunction, and loss of control of his bowels.
Cenac referred plaintiff to a psychiatrist, Dr. Harold T. Conrad, on March 26, 1992. Conrad diagnosed severe, recurrent major depression. He stated plaintiff has genuine terror of becoming a quadriplegic. Conrad opined that most of plaintiff's major depression is related to this accident, although his father's stroke and his girlfriend's move to New Jersey were "relatively minor" factors in his depression. Conrad placed plaintiff on antidepressants, but he had difficulty because the drugs made plaintiff's bowel problems worse. At the time of trial, plaintiff was still taking medication for depression.
Conrad testified plaintiff is "slowly getting significantly better," although he still had intermittent anxiety attacks. He stated he hoped plaintiff would be back to his pre-accident state six months to two years after trial (two and one-half to four years after the accident).
While the sum awarded to plaintiff for mental anguish may be on the low side, we feel it is not below that sum which a reasonable trier of fact could assess under the particular facts of this case, nor is it so low as to shock the conscience. Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Cheramie v. Horst, 93-1168 (La.App. 1st Cir. 5/20/94), 637 So.2d 720. Thus, we affirm that award.

C. Medical Expenses
Plaintiff contends the amount awarded for medical expenses is inadequate, while Anko and State Farm contend it is excessive. The parties stipulated that plaintiff's past medical expenses and hospital bills totalled $48,878.65. Thus, the jury must have intended to award plaintiff $51,121.35 in future medical expenses.
Anko and State Farm contend there is no evidence in the record to support an award of future medical expenses. However, Cenac testified the ulnar transposition surgery was necessitated by the accident and that it would cost $12,000.00 to $13,000.00 for the hospital bill and Cenac's services. Plaintiff was still under Conrad's psychiatric care at the time of trial, with a prognosis of six months to two years of future care.
In order to recover future medical expenses, the appellate record must establish that future medical expenses will be necessary and inevitable. Stiles v. K Mart, 597 So.2d 1012, 1013 (La.1992). An award for future medical expenses will not be supported in the absence of medical testimony that they are indicated and setting out the probable cost. Holliday v. United Services Auto. Ass'n, 569 So.2d 143, 146 (La.App. 1st Cir.1990). Nevertheless, when the record establishes that future medical expenses will be necessary and inevitable, courts should not reject the award because the record does not provide the exact value, if the court can determine from the record, past medical expenses, and other evidence a minimum amount that reasonable minds could not disagree would be required. Stiles, 597 So.2d at 1013; Brumfield v. Guilmino, No. 93-0366 (La.App. 1st Cir. 3/11/94), 633 So.2d 903, 908, writ denied, 94-0806 (La. 5/6/94), 637 So.2d 1056.
In light of plaintiff's future medical needs as testified to by Cenac and Conrad and the past medical expenses in the record, we find the award of just over $51,000.00 for future medical expenses is not so far above or below what a reasonable trier of fact could award as to constitute an abuse of the jury's much discretion. Thus, we affirm the award of $100,000.00 for past and future medical expenses.[5]

*696 INCIDENTAL DEMANDS

A. Lynn's and Travelers' cross-claim against State Farm
In their cross-claim, Lynn and Travelers asked that Anko and State Farm pay their "just share" of any amounts for which Lynn and Travelers were found liable. The judgment casts State Farm and Anko for Anko's percentage of negligence and Lynn and Travelers for Lynn's percentage and dismisses the cross-claim. In their answer to the appeal, Lynn and Travelers contend the trial court erred in dismissing the cross-claim and in failing to prorate Lynn's coverage between Travelers and State Farm.
State Farm issued a business liability policy with limits of $1,000,000.00, which listed Anko as the named insured and Lynn as an additional insured. Travelers issued a policy to Lynn providing commercial general liability coverage with an "each occurrence" limit of $1,000,000.00.
The State Farm policy contains an "other insurance" clause which provides in pertinent part:
This insurance shall apply only as excess insurance over any other valid and collectible insurance which would apply in the absence of this policy, except insurance written specifically to cover as excess over the limits of liability applicable to Section II of this policy.
The "other insurance" clause in the Travelers policy contains the following language:
If other valid and collectible insurance is available to the insured for a loss we cover..., our obligations are limited as follows:
a. Primary Insurance
This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
. . . .
c. Method of Sharing
If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.
In Penton v. Hotho, 601 So.2d 762 (La. App. 1st Cir.1992), this court dealt with insurance policies containing very similar provisions. We held that a policy provision such as State Farm's does not convert the policy into an excess policy; it is simply a primary policy with an "excess" other insurance clause. Under Penton, Travelers and State Farm both provide primary coverage to Lynn, their other insurance clauses are considered mutually repugnant, and the loss must be prorated among the two insurers. As their policy limits are equal, each insurer is liable for 50% of the judgment against Lynn. The trial court erred in dismissing Travelers' cross-claim and in failing to prorate the loss.

B. State Farm's and Anko's Third Party Demand
Lynn's and Travelers' cross-claim sought to shift liability from them to Anko and State Farm, contending that if the premises were defective, it was due to the sole fault of Anko's predecessor in interest, who provided the plans and selected the contractor. State Farm's and Anko's third party demand against Travelers contained no such allegations; essentially it alleged Travelers provided insurance coverage to Lynn, which Travelers has never denied. However, in its written reasons, the trial court stated each incidental demand alleged the other co-defendants were entirely liable for the defects in the premises. The trial court found neither party was entirely liable and that the jury's *697 division of fault between the lessor and lessee was substantially correct.
Anko and State Farm, in their answer to appeal, contend the trial court erred in dismissing their third party demand and in failing to find Lynn was solely at fault under various provisions of the lease, the Louisiana Civil Code, and the Louisiana Revised Statutes. We find no merit in these contentions.
The object of their third party demand, to ensure that Travelers provided insurance coverage for Lynn, was achieved. Regarding their claim that Lynn should be solely liable, the evidence showed that Anko's predecessor in interest (Diamond Foods) provided the plans and specifications and selected the contractor, and the restaurant was operated at the site for approximately nine years before the accident. There is ample evidence in the record to support a finding of independent negligence by Anko, which would preclude shifting fault from Anko to Lynn.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to delete the finding of contributory negligence on the part of plaintiff, to reallot the fault 30.8% to Lynn and 69.2% to Anko, and to increase the amount of damages awarded to plaintiff for past and future physical pain and suffering from $35,000.00 to $200,000.00. The awards for past and future mental anguish and past and future medical expenses are affirmed. The dismissal of the cross-claim of Lynn and Travelers is reversed, and judgment is rendered on the cross-claim casting State Farm in judgment for 50% of the amount for which Lynn and Travelers are liable. The dismissal of Anko's and State Farm's third party demand is affirmed. All costs of these proceedings are to be divided equally among defendants.
AFFIRMED IN PART, AMENDED AND AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] The petition erroneously names "State Farm Insurance Company."
[2] The Second Supplemental and Amending Petition named "Village East Realty and/or Lynn Park Shopping Center, a Louisiana partnership."
[3] The jury also entered "0" for "Past, Present and Future loss of education."
[4] State Farm also assigned as an issue on appeal and argued in brief that it had no coverage for either Anko or Lynn. At oral argument State Farm's counsel waived the coverage defense because of the conflict of interest it presented.
[5] In light of our decision on the merits, we pretermit discussion of plaintiff's assignments of error regarding post-trial motions.