774 So.2d 1093 (2000)
Beatrice QUINN, Plaintiff-Appellee,
v.
WAL-MART STORES, INC., Defendant-Appellant.
No. 34,280-CA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 2000.
*1096 Vicki C. Warner, Shreveport, Counsel for Appellant.
Kenneth Anderson Brister, Lake Providence, Amy Clark Ellender, Daniel Joseph Ellender, Mer Rouge, Counsel for Appellee.
Before NORRIS, CARAWAY and DREW, JJ.
NORRIS, Chief Judge.
Wal-Mart challenges a jury award of damages to a shopper who was injured by a falling television. For the reasons expressed, we amend and affirm.

Factual Background
On July 10, 1996, Mrs. Beatrice Quinn and her husband were shopping for a television at the Bastrop Wal-Mart. Because the 27" television she decided to purchase was located on the top riser of the electronics department, two Wal-Mart employees used a large rolling ladder to retrieve the boxed TV. As the employees attempted to lower the box, they lost control, and the box fell, striking Mrs. Quinn in the neck and left shoulder. One employee saw the TV strike Mrs. Quinn and noted that although she was not rendered unconscious, she was in immediate pain. Mr. and Mrs. Quinn then immediately went to the emergency room, where X-rays showed no displacement or fracture. She was diagnosed with musculoskeletal pain, given medication, and discharged.
*1097 The next day, Mrs. Quinn went to Dr. Marc Horowitz, who had treated her previously for left shoulder problems she sustained while working as a nursing home Certified Nursing Assistant. Dr. Horowitz found her shoulder normal, although he did find tenderness on the back of the shoulder. Five days later, Mrs. Quinn returned to Dr. Horowitz, still complaining of pain despite the painkillers he previously prescribed for her. Notably, Dr. Horowitz' impression was that she may be faking the injury. After a third visit on July 18, 1996, Dr. Horowitz ordered a CAT scan of her head and neck; the test was normal. Thereafter, Mrs. Quinn sought treatment at E.A. Conway Hospital and LSUMC, still complaining of shoulder pain. After physical therapy proved unsuccessful, she underwent arthroscopic surgery at LSUMC on April 16, 1997 to repair a labral tear on the front of her shoulder and some bursitis on the top. By August, 1997, hospital records indicate that she had regained a full range of motion.
Eight months after the 1997 surgery, Mrs. Quinn saw Dr. John Green, who ordered an MRI which disclosed a "massive rotator cuff tear." Dr. Green indicated that surgery may be needed to repair the rotator cuff tear, but it may not be necessary since she was doing well. As of May, 1999, Mrs. Quinn's only work limitations were no lifting over ten pounds and no repetitive pushing or pulling.
Since the Wal-Mart accident, Mrs. Quinn never returned to her full-time work at the nursing home where she had a solid work record. In the instant lawsuit, after a four day trial, the jury found in favor of Mrs. Quinn, awarding her general and special damages and her three children and husband loss of consortium damages. After Wal-Mart's motions for JNOV and Motion for New Trial or Remittitur were denied, this appeal followed.

Discussion-Surveillance Tapes
In its first assignment of error, Wal-Mart contends that the trial judge erred by excluding from evidence two surveillance videos taken of Mrs. Quinn three weeks prior to trial. These tapes, Wal-Mart claims, show Mrs. Quinn engaging in activities which she testified that her ability to do was impaired due to her injury. Wal-Mart contends that since the videos directly impeach her testimony and call into doubt the nature and extent of her injuries as claimed, they should be shown to the jury. Not contesting liability, but solely the damage award, Wal-Mart suggests that since the trial judge excluded the tapes, the fact-finding process has been so tainted that a new trial is necessary because the jury was deprived of an opportunity to assess the true nature and extent of Mrs. Quinn's injuries and to assess damages accordingly. Alternatively, relying on McLean v. Hunter, 495 So.2d 1298 (La.1986) and Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975), Wal-Mart argues that the jury verdict should be reviewed de novo because these tapes were erroneously excluded by the trial court.
The admission of surveillance tapes into evidence is largely within the discretion of the trial court. Olivier v. LeJeune, 95-0053 (La.2/28/96), 668 So.2d 347. Particularly, the trial court must consider whether the videotape accurately depicts what it purports to represent, whether it tends to establish a fact of the proponent's case, and whether it will aid or confuse the jury's understanding. Weighed against those factors, the trial court must consider whether the videotape will unfairly prejudice or mislead the jury, confuse the issues, or cause undue delay. The trial court may exclude the evidence if the factors favoring admission are substantially outweighed by the factors against it. La. C.E. arts. 401-403; Malbrough v. Wallace, 594 So.2d 428, 431 (La. App. 1st Cir.1991), writ denied, 596 So.2d 196 (La.1992); U.S. F. & G. v. Hi-Tower Concrete Pumping, 574 So.2d 424 (La.App. 2d Cir.), writs denied, 578 So.2d 136, 137 (La.1991).
*1098 In the present case, we agree with the trial court's observation that Mrs. Quinn did not claim that she was completely disabled and could not do the activities portrayed in the videos, but rather she claimed that her mobility is restricted so that these activities produce discomfort or pain. Mrs. Quinn testified that she helped care for her great-nephew, which is depicted in the videos. Although the videos show her picking the child up which presumably is contrary to her doctor's restrictions, Mrs. Quinn never denied that she could do so if necessary. She further testified that in that event, she would transfer the child to her uninjured arm precisely what the video shows her doing. Likewise, the videos depict Mrs. Quinn fixing her hair using her left arm; notably, she never denied she could do this, only that prolonged use of her left arm produces discomfort in her injured shoulder. In addition, the tapes do not fairly indicate whether Mrs. Quinn did experience pain after engaging in these activities. Accordingly, showing these tapes to the jury without context or explanation, could, as the trial court concluded, create a prejudicial impression on the jury that outweighs any probative value they may have to impeach Mrs. Quinn's testimony. La. C.E. art. 607 D(2). As noted by the Louisiana Supreme Court, "evidence in the form of moving pictures or videotapes must be approached with great caution because they show only intervals of the activities of the subject, they do not show rest periods, and do not reflect whether the subject is suffering pain during or after the activity." Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983). As such, the trial court did not abuse its discretion in disallowing the tapes. This assignment has no merit.

Quantum Future Medical Expenses
In its second assignment of error, Wal-Mart contends that the trial court's awards of general damages, loss of future earning capacity, and loss of consortium to her husband and three children are excessive. In addition, Wal-Mart contends that the jury erred in its award of future medical expenses, specifically, $25,000 in future medical expenses for a second surgery to repair her torn rotator cuff.
Future medical expenses must be established with some degree of certainty, and an award of such cannot be predicted on mere speculation. Morris v. United Services Automobile Assoc., 32,528 (La.App.2d Cir.2/18/00), 756 So.2d 549; Holt v. State, 28,183 (La.App. 2d Cir.4/3/96), 671 So.2d 1164 (La.App.2d Cir. 1996), writ denied, 96-1132 (La.6/21/96), 675 So.2d 1080. Awards for future medical expenses that may or may not be incurred require medical testimony that they are indicated and their probable costs. Id.; Kessler v. Southmark Corp., 25,941 (La.App.2d Cir. 9/21/94), 643 So.2d 345. The plaintiff must show that, more probably than not, these expenses will be incurred. Morris, supra; Morrison v. Kappa Alpha Psi Fraternity, 31,805 (La. App.2d Cir.5/7/99), 738 So.2d 1105, writs denied 99-1668, 99-1607, 99-1622 (La.9/24/99) 747 So.2d 1120, 749 So.2d 634, 635.
At trial, Mrs. Quinn produced the deposition of Dr. John Green, her treating physician, who opined that if her painful condition persisted, then a second surgery to repair what he described as a "rather large" rotator cuff tear which would never heal on its own would be necessary. Even in the absence of surgery, Green further opined, Mrs. Quinn would still need extensive physical therapy. At trial, although Mrs. Quinn expressed a fear of undergoing an additional surgery and a resulting determination to "live with" the pain, she did testify that her pain remained unabated and she never ruled out a second surgery. Weighed against these fears was Dr. Green's deposition testimony that the actual surgery, if performed, would not be the traumatic experience Mrs. Quinn envisioned, only requiring a one day stay at the hospital accompanied by physical therapy. *1099 Thus, based on the evidence presented by Mrs. Quinn at trial, the jury was entitled to find that the second surgery would be beneficial and that, more probably than not, that she would undergo it. In fact, "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart v. State, Through DOTD, 92-1328 (La.4/12/93), 617 So.2d 880; Rosell v. ESCO, 549 So.2d 840 (La.1989); Housley v. Cerise, 579 So.2d 973, 977 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La. 1990).
Although the jury was within its discretion to award future medical expenses, it abused its discretion in awarding $25,000. This is because although Mrs. Quinn presented evidence of the need for future medical expenses, no credible evidence of the exact or probable amount needed was presented. In order to recover future medical expenses, the plaintiff must set out the probable cost; when the exact value is not provided, past medical expenses may be used to reach an amount that reasonable minds could not disagree would be required. Domangue v. Mr. Gatti's, Inc., 93-2392 (La.App. 1st Cir. 6/23/95), 657 So.2d 689, 695; Brumfield v. Guilmino, 93-0366 (La.App. 1st Cir. 3/11/94), 633 So.2d 903, 908, writ denied, 94-0806 (La.5/6/94), 637 So.2d 1056. Since the jury was presented with evidence that Mrs. Quinn's prior medical bills were in excess of $18,000, we find an award of $18,000, considering the additional surgery and physical therapy this 42-year-old woman may require in future years to be an award justified by the record.

Lost Earning Capacity
While not contesting the jury's award of lost wages, past and future, Wal-Mart next challenges the jury's award of $66,000 in lost earning capacity. Wal-Mart contends that Mrs. Quinn failed to convincingly establish a residual injury impinging on her future earning potential and that any inability to find suitable employment commensurate with her job restrictions is attributable more to the economically depressed area she lives in rather than her injury.
Loss of earning capacity refers to a person's potential and is not necessarily determined by actual loss. Batiste v. New Hampshire Ins. Co., 94-1467 (La. App. 3d Cir.5/3/95), 657 So.2d 168, writ denied, 95-1413 (La.9/22/95), 660 So.2d 472. The plaintiff need not be working or even in a certain profession to recover this type of award. Id. What is being compensated is the plaintiff's lost ability to earn a certain amount and she may recover such damages even though she may never have seen fit to take advantage of that capacity. Id.
In determining whether a personal injury plaintiff is entitled to recover for the loss of earning capacity, the trial court should consider whether and how much plaintiff's current condition disadvantages her in the work force. Id. Some factors to be considered in determining loss of earning capacity include plaintiff's physical condition before and after her injuries, her age and life expectancy, the amount plaintiff probably would have earned absent the injuries, the probability she would have continued to earn wages over the balance of her life. Williams v. City of Monroe, 27,065 (La.App.2d Cir.7/3/95), 658 So.2d 820, writs denied, 95-1998, 95-2017 (La.12/15/95), 664 So.2d 451, 452. Awards for lost income are speculative and cannot be calculated with absolute certainty. Id. The trial court is accorded broad discretion in assessing them, but there must be a factual basis in the record for the award. Id.
Credibility determinations, including the evaluation of expert testimony, are factual issues to be resolved by the trier of fact. Stobart, supra; Orea v. Scallan, 32,622 (La.App.2d Cir.1/26/00), 750 So.2d 483; Nichols v. Nichols, 32,219 (La. App.2d Cir.9/22/99), 747 So.2d 120. Where *1100 the testimony conflicts, the fact finder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even where the appellate court may feel that its own evaluations and inferences are more reasonable than those of the jury. Stobart v. State, supra.
In the present case, Mrs. Quinn presented evidence that she had worked as a CNA for nearly 20 years prior to the accident and that she had consistently earned high marks in her evaluations. She further established that as a result of her injuries, she is restricted to lifting no more than 10 pounds and cannot do repetitive pushing or pulling tasks which a nursing home CNA must be able to perform. Dr. Richard Galloway, a vocational rehabilitation expert, similarly testified that given her current restrictions, she is incapable of doing CNA work and that although she is capable of performing entry-level work elsewhere, the opportunities are limited in her community.
On the present record, we find that an award of $66,000 is not unreasonable, particularly in light of the testimony of Dr. Charles Bettinger, an expert economist and statistician, who testified that assuming Mrs. Quinn's last rate of pay, and assuming no pay increases, she would have earned nearly $200,000 over the remainder of her expected working life. Although Wal-Mart may be correct in its claims that Mrs. Quinn could find alternative work which could accommodate her disability in other metropolitan areas, we find nothing in the record to controvert Dr. Galloway's assessment that Mrs. Quinn's earning potential in her community is limited. As such, this assignment has no merit.

General Damages
Wal-Mart argues that the award of $150,000 in general damages is excessive and an abuse of the trial court's discretion.
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured exactly in monetary terms. Sallis v. City of Bossier City, 28,483 (La.App.2d Cir. 9/25/96), 680 So.2d 1333, writs denied, 96-2592, 96-2599 (La.12/13/96), 692 So.2d 376, 1063. The jury, as trier of fact, is given much discretion in the assessment of damages. La. C.C. art. 2324.1. Upon appellate review, damage awards will be disturbed only when there has been a clear abuse of that discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). The initial inquiry is whether the award for the particular injuries and their effects on the particular plaintiff under the particular circumstances is a clear abuse of the much discretion of the trier of fact. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). A comparison of other awards in other cases is appropriate only after the appellate court finds such abuse of discretion. Then it is proper to resort to prior awards only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
It is only when an award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that an appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The primary considerations in the assessment of damages are the severity and duration of the injured party's pain and suffering. Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946 (La.App. 2d Cir.), writ denied, 580 So.2d 923 (La.1991).
If an articulated analysis of the facts discloses such an abuse of discretion, *1101 then examination of prior awards in similar cases is proper; an abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Dixon v. Tillman, 29,483 (La. App.2d Cir. 5/7/97), 694 So.2d 585, writ denied, 97-1430 (La.9/19/97), 701 So.2d 174; Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987). Whether an award is excessive depends upon whether the amount can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact; likewise, to determine if an award is inadequate, the evidence must be viewed in the light most favorable to the defendant. Manuel v. State Farm Mut. Auto. Co., 30,765 (La.App.2d Cir. 8/19/98), 717 So.2d 277.
After reviewing the record, we conclude that the trial court did not abuse its broad discretion in awarding general damages. As established at trial, Mrs. Quinn underwent surgery to repair a labral tear approximately ten months after a 100-130 pound TV box fell on her. Despite this surgery and extensive physical therapy, she experienced pain, which led to the discovery of her rotator cuff tear which probably will require future surgery and will undoubtedly require physical therapy.
Wal-Mart contends that the general damage award was excessive, in part, because the jury should not have considered the rotator cuff tear. Because this was not originally diagnosed and was not discovered during Mrs. Quinn's first operation, Wal-Mart suggests, the tear is not attributable to the accident but rather to degeneration or some other cause. Dr. Green, however, opined that the rotator cuff tear was too rapid to attribute to pure degenerative damage and was attributable, at least in part, to the trauma Mrs. Quinn suffered as a result of the accident. Dr. Green also testified that for such a tear to have developed, Mrs. Quinn's arm had to be in the general position which she described when the TV struck her; this was corroborated by Dr. Karl Bilderback, one of the surgeons who worked on Mrs. Quinn. Dr. Green further opined that although the tear should have been visible during the 1997 surgery, it could have gone undetected at that time if it began inside the tendon and enlarged with time. Faced with these two legitimate views of the evidence, the jury was entitled to take into consideration the rotator cuff injury and its subsequent pain and treatment as a part of its award.
In addition, Mrs. Quinn further established that she had been living with pain during the entire four years subsequent to the accident. In sum, Mrs. Quinn established that her injuries not only resulted in the loss of her chosen career, but also a certain amount of ability to take care of herself, her family, and her household leading to despondency and depression and a resultant loss of enjoyment of life. As such, based on the facts and circumstances of this case, an award of $150,000 in general damages is not an abuse of the trial court's great discretion and the award is sufficiently reasonable as not to require an examination of similar awards in similar cases. This assignment is without merit.

Loss of Consortium Claims
Next, Wal-Mart argues that the trial court fell into error by failing to remitt what it contends are excessive damages for loss of consortium awarded by the jury to Mrs. Quinn's husband and children. The jury awarded $10,000 to Mrs. Quinn's husband, $30,000 to her eldest daughter Illicia, and $5,000 each to her youngest children, aged 15 and 11.
In general, a claim for loss of consortium has seven elements: (1) loss of love and affection, (2) loss of society and companionship, (3) impairment of sexual relations, (4) loss of performance of material services, (5) loss of financial support, *1102 (6) loss of aid and assistance, and (7) loss of fidelity. Bell v. USAA Cas. Ins. Co., 30,172 (La.App.2d Cir.1/21/98), 707 So.2d 102, 110, writs denied, 98-0712, 98-0766 (La.5/8/98), 718 So.2d 433, 434; Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). A loss of consortium award is a fact-specific determination, to be decided case-by-case and is disturbed only if there is a clear showing of an abuse of discretion. Rudd v. Atlas Processing Refinery, 26,048 (La.App.2d Cir.9/21/94), 644 So.2d 402, 411, writ denied, 94-2605 (La.12/16/94), 648 So.2d 392; Johnson v. Wal-Mart Stores, Inc., 616 So.2d 817 (La.App. 2d Cir.1993). If an abuse of discretion is found, it is incumbent upon this court to determine the greatest or least amount that the fact finder could have reasonably awarded, and either raise or lower the award to that extent. Theriot, supra; Youn v. Maritime Overseas Corp., supra.
As for Mr. Quinn's claims, testimony was offered as to the impact of Mrs. Quinn's injuries on their relationship and finances. She testified that she was depressed and despondent, unable to have sex as frequently as before the accident, and was unable to complete her housework. Mr. Quinn also testified as to the significant amount of time spent driving his wife to medical appointments in Shreveport, which often required overnight stays, as well as the need to mortgage their home and borrow money from friends and family to replace Mrs. Quinn's lost income.
No evidence suggesting a strained marriage, loss of love and affection, or a continuing lack of sexual relations directly attributable to the accident was presented, however. In fact, no cognizable detrimental change to the marriage can be seen; prior to the accident, the Quinn's marriage was strained due to Mr. Quinn's job with the Army Corps of Engineers; they were not sleeping together, and had discussed separation. After the accident, however, Mr. Quinn testified that their marriage improved due to the increased time they spent together and his resignation from the Corps of Engineers. As such, although "every personal injury tends to decrease the parties' overall happiness," it is the plaintiff who carries the burden of proving a definite loss on each element of damage. Finley, supra. As such, upon the evidence presented, we find that the jury's $10,000 award for loss of consortium is excessive and $5,000 is the highest possible award in light of the testimony that Mrs. Quinn cannot fully perform household chores and the frequency of sexual relations has changed but not extinguished. See, Marie v. John Deere Ins. Co., 96-1288 (La.App. 1st Cir.3/27/98), 691 So.2d 1327 (loss of frequency of sexual relations).
Likewise, the $30,000 awarded Mrs. Quinn's oldest daughter, 17-year-old Illicia, is excessive. Mrs. Quinn presented testimony that due to her injuries, Illicia assumed an increased role in performing basic household chores, helping comb her mother's hair, and assisting in the care of her younger siblings. She was not shown to be totally dependent upon mother economically, emotionally or for domestic services, however. In addition, at trial, Illicia testified that her mother was not completely handicapped, and that in February, 1999, after she had been involved in a serious automobile accident, her mother actually took care of her. Further, the record indicates that Illicia graduated from high school in 1998 (her mother was able to attend the ceremony), and presently is an independent college student. Until an injured party's condition deteriorates to such an extent that her family is actually deprived of her consortium, service, or society, the family member has suffered no injury. Faraldo v. Hanover Ins. Co., 600 So.2d 81 (La.App. 4th Cir.1992). As such, since any deprivation of services to Illicia was minimal and temporary, an award of $7,500.00 is the highest possible award under these circumstances.
*1103 As for the younger children, no other testimony was offered to substantiate the claims for loss of consortium other than a generalized claim that Mrs. Quinn's condition resulted in an inability to provide for their emotional and physical needs. No other evidence was presented suggesting that the children suffered as a result of their mother's injury. Although Mrs. Quinn presented testimony that she was unable to assist the children financially, the jury has already provided for lost past and future wages; as such, based on this scant evidence, an award of $750.00 to each child is the highest possible award.

Conclusion
For the reasons discussed above, the loss of consortium award to Mr. Judge Quinn is amended to $5,000.00; the loss of consortium award to Illicia Quinn amended to $7,500.00, the loss of consortium award to Anthony Quinn amended to $750.00; and the loss of consortium award to India Quinn amended to $750.00. The future medical expenses award is reduced to $18,000.00. In all other respects, the judgment of the district court is AFFIRMED. Costs of this appeal are assessed to Wal-Mart.
AMENDED, AND AS AMENDED, AFFIRMED.