803 So.2d 1039 (2001)
Theresa Ann Glorioso BRANDAO, et al, Plaintiffs-Appellees,
v.
WAL-MART STORES, INC., Defendant-Appellant.
No. 35,368-CA.
Court of Appeal of Louisiana, Second Circuit.
December 19, 2001.
Rehearing Denied January 17, 2002.
*1041 Middleberg, Riddle & Gianna, by Dominic Joseph Gianna, Marianne Garvey, Counsel for Appellant.
Barham & Warner, LLC by Vicki C. Warner, Gregory J. Barro, Counsel for Appellees.
Before BROWN, WILLIAMS and STEWART, JJ.
*1042 BROWN, Judge.
Both parties have appealed portions of the jury's damage award in this "falling merchandise" case. Agreeing with plaintiffs that the jury's failure to award loss of consortium damages and all past medical expenses was error, we amend in part and, as amended, affirm.

Facts and Procedural Background
On July 3, 1996, Terri Brandao and her daughters, Tiffany and Tara, were shopping in the Wal-Mart SuperCenter Store located at 2536 Airline Drive in Bossier City, Louisiana.
A Wal-Mart employee, Ronald Morrison, was attempting to retrieve a boxed vacuum cleaner from the top shelf which was approximately seven to eight feet from the floor. According to Morrison, the vacuum cleaner boxes were stacked more than four units high. Morrison, who climbed on a six foot ladder, lost his balance and fell into the vacuum cleaner boxes, knocking them off onto the opposite side of the shelving assembly. The merchandise fell onto Mrs. Brandao. According to Morrison, approximately ten boxed vacuum cleaners, as well as miscellaneous buckets, baskets, cooking utensils and other items fell onto and around Mrs. Brandao.
The blow to Mrs. Brandao's head was such that it knocked her to the floor into a sitting position. Mrs. Brandao recalls an immediate awareness of intense pain in her head, neck and shoulders as well as a "dazed" sensation. She was taken to Schumpert Medical Center in an ambulance and thereafter received medical treatment for her injuries.
As a result of the accident, Mrs. Brandao suffered a closed head injury which resulted in permanent brain damage manifested by cognitive defects which include: "ice pick" headaches; constant or nearconstant headaches; loss of memory; loss of and/or impaired concentration; impaired verbal and manual communication; a likely intellectual functioning decline (decreased I.Q.); a striking bilateral impairment of motor functions, including tap, grip, strength, grooved pegboard and tactual performance; clear impairment of abstract thinking; abnormalities in visual memory; borderline impaired level of ability to learn new nonverbal information and to retain and recognize nonverbal information; bilateral motor impairment; impairment of the ability to abstract nonverbally; likely impairment involving both the prefrontal area and the right parietal area of the brain; and left hemisphere dysfunction anteriorly.
Terri Brandao filed suit against Wal-Mart seeking damages for her injuries. Terri's husband, Timothy Brandao, and her minor daughters, Tiffany and Tara, asserted claims for loss of consortium. According to plaintiffs, the sole cause of the accident and their resulting injuries was the negligence of Wal-Mart employee Ronald Morrison. Wal-Mart filed an answer denying liability. At trial, Wal-Mart persisted in denying liability despite the obvious negligence of its employee.
A jury found in favor of plaintiffs and made the following awards:

Theresa Brandao
Past Medical Expenses: $ 25,000
Future Medical Expenses: $ 31,000
Past Loss of Earning Capacity: $ 38,000
Future Loss of Earning Capacity: $125,000
Past Pain and Suffering: $ 20,000
Future Pain and Suffering: $ 15,000
Past Disability: $ 25,000
Future Disability: $ 31,000
Past Mental Anguish: $ 35,000
Future Mental Anguish: $100,000
 ________
 $445,000
Tiffany Brandao
Past Loss of Consortium: $ 21,500
Future Loss of Consortium: $ 21,500
 ________
 $ 43,000
Tara Brandao
Past Loss of Consortium: $ 21,500
Future Loss of Consortium: $ 21,500
 ________
 $ 43,000

*1043 The jury declined to award Tim Brandao any damages for loss of consortium. Wal-Mart has appealed the jury's award as excessive. Plaintiffs have answered the appeal seeking an increase in the amount awarded for past medical expenses and an award for Mr. Brandao's loss of consortium.

Discussion

Loss of Earning Capacity
Wal-Mart asserts that the jury erred in awarding Terri Brandao $38,000 for past lost earning capacity and $125,000 for future lost earning capacity. On the other hand, plaintiffs contend that a review of the record shows that the jury's award is amply supported by the evidence and should therefore be affirmed.
Loss of earning capacity refers to a person's potential and is not necessarily determined by actual loss. Quinn v. Wal-Mart Stores, Inc., 34,280 (La.App. 2d Cir.12/06/00), 774 So.2d 1093, writ denied, 01-0026 (La.03/09/01), 786 So.2d 735; Batiste v. New Hampshire Insurance Co., 94-1467 (La.App. 3d Cir.05/03/95), 657 So.2d 168, writ denied, 95-1413 (La.09/22/95), 660 So.2d 472. The claimant need not be working or even in a certain profession to recover such an award. Id. What is being compensated is the plaintiff's lost ability to earn a certain amount and she may recover such damages even though she may never have seen fit to take advantage of that capacity. Id.; Petrus v. Bain, 32,231 (La.App. 2d Cir.09/22/99), 742 So.2d 739.
In determining whether a personal injury plaintiff is entitled to recover for the loss of earning capacity, the trial court should consider whether and how much plaintiff's current condition disadvantages her in the work force. Quinn, supra; Batiste, supra. Some factors to be considered in determining loss of earning capacity include plaintiff's physical condition before and after her injuries, her age and life expectancy, her past work record, the amount plaintiff probably would have earned absent the injuries, the probability that she would have continued to earn wages over the balance of her life, and discount and inflation rates. Doss v. Second Chance Body Armor, Inc., 34,788 (La. App. 2d Cir.08/22/01), 794 So.2d 97; Quinn, supra; Robbins v. State ex. rel. Dept. of Labor, 31,590 (La.App. 2d Cir.02/24/99), 728 So.2d 991.
Awards for lost income are speculative and cannot be calculated with absolute certainty. Quinn, supra; Robbins, supra; Williams v. City of Monroe, 27,065 (La.App. 2d Cir. 07/03/95), 658 So.2d 820, writs denied, 95-1998, 95-2017 (La.12/15/95), 664 So.2d 451, 452. The trier of fact is accorded broad discretion in assessing such damages, but there must be a factual basis in the record for the award. Id.
Dr. Richard Galloway was retained by plaintiffs to conduct a vocational rehabilitation evaluation of Mrs. Brandao and to determine the impact her injuries had on her ability to work. During his initial interview with Mrs. Brandao, more than two years post-accident, Dr. Galloway noticed that she was having difficulty with her memory.
Prior to her marriage, Mrs. Brandao worked as an office manager in a stockbroker's office for five years. Some of her duties included computer input, overseeing banking matters, reconciling bank statements, depositing money and taking care of accounts receivable and accounts payable. Dr. Galloway felt that the fact that Mrs. Brandao held such a position at a young age (she was a recent high school graduate when she started) showed stability and maturity.
*1044 After evaluating Mrs. Brandao, Dr. Galloway felt that her injuries resulted in problems that prevented her from performing work that required abstract thinking and recognizing similarities, as well as jobs requiring prolonged concentration. Dr. Galloway opined that Mrs. Brandao could not hold down a job requiring these skills on a day-to-day basis. Dr. Galloway noted that Mrs. Brandao's problems which resulted from the accident included attention problems, concentration problems, memory problems, difficulty with solving problems, abstract thinking difficulties and delay in processing information.
Dr. Galloway noted that Mrs. Brandao was a housewife and a stay-at-home mother. However, he felt that, before the accident, she was qualified for many office jobs, but that after the accident, the number of jobs she was qualified to perform had been significantly reduced. Dr. Galloway opined that before the accident, Mrs. Brandao had the skills necessary to hold down long-term employment in positions such as that of an office manager. As of the time of his evaluation, however, Dr. Galloway felt that there were very few jobs that Mrs. Brandao could realistically expect to perform.
Dr. Galloway testified that Mrs. Brandao, as a result of her injuries, experienced a complete diminution in her ability to earn outside the house in that there are not many employers who are willing to employ people who suffer from those type of problems. While she may initially be hired, Mrs. Brandao's inability to "stick to it" and maintain long-term concentration would probably prevent an employer from retaining her for a period of time. Because Mrs. Brandao has "good days" and "bad days," with the bad ones sometimes running two or more consecutive days in a row, her prospects for long-term employment are poor. Had she not been injured, Mrs. Brandao could have held down jobs similar to those she had prior to the accident.
Dr. Galloway opined that had Mrs. Brandao not been injured and chosen to re-enter the work force, she could have realistically expected to receive entry level pay of between $5.15 and $7.50 per hour and could have eventually earned between $400 and $650 per week (approximately $9.50 to $13.50 per hour) as an office manager performing the same duties she did prior to her injury and that it would take her about five to six years to reach this rate of pay. Dr. Galloway opined that the chances of Mrs. Brandao returning to full-time employment, 40 hours per week on a regular basis, were not good.
Based upon Dr. Galloway's findings, Dr. Melvin Harju, an economist, calculated what Mrs. Brandao's past lost earning capacity would have been for the three and one-half years between her injury and the date of trial based upon the minimum wage rate of $5.15 per hour. According to Dr. Harju, this amount is $37,928, which does not include estimated pay raises or fringe benefits. Adding in fringe benefits, the figure is $47,145. Using $7.50 per hour, Dr. Harju calculated a lost past earning capacity in the amount of $55,235; with fringe benefits, this amount would be $68,658.
We note that the jury awarded Mrs. Brandao $38,000 for past lost earning capacity, which amount is almost exactly the figure calculated by Dr. Harju based on minimum wage without factoring in fringe benefits. In addition to the testimony of Dr. Galloway and Dr. Harju, who calculated a past lost earning capacity range from $37,928 to $68,658, the jury heard extensive testimony from medical and lay witnesses regarding Mrs. Brandao's condition and the severe impact that her injuries have had on her. We cannot say that the *1045 jury's award of $38,000 for past lost earning capacity is an abuse of their discretion.
Dr. Harju also calculated a future loss of earning capacity for Mrs. Brandao for a period of 19.5 years (through age 66.2 adjusted for early mortality/disability). His figures ranged from $187,937 to $531,1014. The jury's award of $125,000 is clearly not an abuse of their discretion in light of the overwhelming evidence of the permanency of Mrs. Brandao's condition.

Loss of Consortium

Timothy Brandao
Plaintiffs contend that the jury erred in rejecting Mr. Brandao's loss of consortium claim. Wal-Mart asserts that the jury was correct in failing to award damages for loss of consortium because plaintiffs presented insufficient evidence to support such a claim.
In general, a claim for loss of consortium has seven element: (1) loss of love and affection; (2) loss of society and companionship; (3) impairment of sexual relations; (4) loss of performance of material services; (5) loss of financial support; (6) loss of aid and assistance; and (7) loss of fidelity. Quinn, supra; O'Neal v. Scott, 34,276 (La.App.2d Cir.12/20/00), 775 So.2d 1155; Bell v. USAA Casualty Insurance Co., 30,172 (La.App. 2d Cir.01/21/98), 707 So.2d 102, writs denied, 98-0712, 98-0766 (La.05/08/98), 718 So.2d 433, 434; Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). To be compensable, it is not necessary for a claim for consortium to include damages from each type of loss. Robbins, supra; Maranto v. Goodyear Tire & Rubber Co., 25,114 (La.App. 2d Cir.05/10/95), 661 So.2d 503.
A loss of consortium award is a fact-specific determination, to be decided case-by-case and is disturbed only if there is a clear showing of an abuse of discretion. Quinn, supra; O'Neal, supra; Rudd v. Atlas Processing Refinery, 26,048 (La. App. 2d Cir.09/21/94), 644 So.2d 402, writ denied, 94-2605 (La.12/16/94), 648 So.2d 392.
In this case, the jury completely rejected Mr. Brandao's loss of consortium claim. In light of the evidence, we find that this was clear error. As such, this court will award an amount that we feel will compensate plaintiff for his loss.
Tim Brandao is a national sportscaster with CBS and his work requires him to travel extensively, especially during NCAA and professional football and NCAA basketball seasons. The record establishes, however, that the Brandaos are a close and loving family. Mr. Brandao testified that after work when he was on the road, the first person he would call was Terri to tell her how much he loved and missed her. Before the accident, the Brandaos had a very open relationship with free dialogue between them. After the accident, it was extremely difficult for them to communicate.
Right after the accident, Tim Brandao stated that he had to learn to take life day by day and that he could only hope that his wife would wake up each successive day in a better frame of mind and with the physical ability to do more. Before the accident, Terri did many things for the family and his career which he never had to think about. After her injuries, however, he had to worry about things getting done, such as preparing his expense reports and income tax documents. Before the accident, whenever Mr. Brandao was in Shreveport, the family would go to church together. After the accident, they stopped going to church with Terri because she was physically unable to go. Before the accident, Terri never had "bad days" which totally incapacitated her ability to socialize or interact with her family. After the accident, even as much as four years later, Terri has *1046 a 50/50 split between "good days" and "bad days." Mr. Brandao stated that he still suffers through the bad days when Terri is unable to provide for him as she once did. Because of Mrs. Brandao's injuries, their social relationships and interactions with close friends have been compromised, adding even more stress and strain to their relationship.
Before the accident, Terri Brandao was fun-loving, outgoing and pragmatic. Afterwards, she did not "have any answers" about what the family was going to do together. Because of Terri's condition, the Brandaos had to repeatedly decline vacations with friends. After years of this type of disruption in their family life, Mr. Brandao expressed frustration and was upset with Terri because she was unable to endure even the simple and basic demands of normal social interaction. Mr. Brandao also testified that Terri's condition has significantly compromised the Brandaos' sexual relationship.
Notwithstanding Mr. Brandao's testimony that he and his wife have grown closer and that his love for her has grown even stronger, the record is replete with incidents which show how the accident has adversely affected the Brandaos' marital relationship. Mrs. Brandao's injuries are permanent; the lifestyle changes the Brandaos have had to adapt to are likewise permanent.
Included in Mr. Brandao's consortium claim is a specific request for an award for loss of household services. As noted above, Louisiana law allows, as an element of damages, reasonable housekeeping expenses necessitated by the incapacity of an injured spouse. Robbins, supra; Maranto, supra.
Prior to the accident, the Brandaos had a housekeeper one day a week. The rest of the time, the housework and all of the yard maintenance and upkeep was performed by Mrs. Brandao. The record shows that, as a result of her injuries, Mrs. Brandao can no longer do either house or yard work. Dr. Harju calculated that, from the date of the accident through trial, approximately three and one-half years, the Brandaos spent $32,164 for housekeeping and yard work that would not have been necessary but for Mrs. Brandao's injuries. Dr. Harju also calculated what the Brandaos can expect to spend for lost future household services. His figures range from a low of $152,234 to a high of $211,457.
Considering the above, we find that the jury erred in failing to award Mr. Brandao damages for loss of consortium. Rather than making separate awards for specific elements, we will award Mr. Brandao the lump sum of $225,000 for his past and future loss of consortium which amount takes into account his loss of Mrs. Brandao's household services.

Tiffany and Tara Brandao
It is Wal-Mart's position that there is absolutely no evidence to support the jury's award of $43,000 to Tiffany and $43,000 to Tara for past and future loss of consortium. Plaintiffs urge that a review of the record, particularly the testimony of Tiffany, the girls' grandmother, Loretta Brandao, and plaintiffs' housekeeper, Leanne Poovey, reveals no abuse of the jury's discretion in its awards to Tiffany and Tara.
We find no merit to Wal-Mart's argument. After rendition of the jury's verdict, Wal-Mart filed a motion for JNOV urging, inter alia, that Tiffany and Tara's consortium awards were excessive. In denying JNOV, the trial court observed:
[I]t's obvious on days Mrs. Brandao can do the things that she was doing prior to the accident, but the testimony was also that for sometimes days at a time, she is unable to do anything. She stays in bed, not able to function. She was very *1047 active in her children's lives. She was a room mother and involved in school activities and wasn't able to do that anymore. What's the value of that to a child? Certainly I don't think a monetary value can be placed on that. So I'm notI don't believe the award the jury made is out of line when you take into consideration the things that a mother normally does with a daughter that Mrs. Brandaoat least at the time of trial had not been able to do for several years. And from the testimony of the doctors, may continue to be unable to do the majority of them for years to come.
We agree with the trial court and will not disturb the jury's awards to the Brandao girls.

Past Medical Expenses
Plaintiffs argue that the jury's award of $25,000 for Mrs. Brandao's past medical expenses is clear error in light of their uncontroverted evidence of expenses totaling $34,908.55. Wal-Mart contends that the jury's decision to award the lesser amount reflects their belief that not all of the expenses were necessary and/or related to the accident.
A claimant's recovery of medical expenses must be confined to those expenses related to the accident. Beasley v. Yokem Toyota, 33,805 (La.App. 2d Cir.08/23/00), 767 So.2d 149; Harper v. Garcia, 32,142 (La.App. 2d Cir.08/18/99), 739 So.2d 996. In order to recover, the plaintiff must prove that, more probably than not, the medical treatment was necessitated by trauma suffered in the accident. Smith v. Clement, 01-0087 (La.App. 3d Cir.10/03/01), 797 So.2d 151; Este' v. State Farm Insurance Co., 96-99 (La.App. 3d Cir.07/10/96), 676 So.2d 850; White v. Longanecker, 93-1122 (La.App. 1st Cir.05/23/94), 637 So.2d 1213, writ denied, 94-1704 (La.10/07/94), 644 So.2d 640.
When a plaintiff claims to have incurred medical expenses and those claims are supported by a bill, the proof is sufficient, unless there is contradictory evidence or reasonable suspicion that the bill is unrelated to the accident. Smith, supra; Landry, supra. A factfinder is in error for failing to award the full amount of medical expenses proven by the victim. Beasley, supra; Sumrall v. Sumrall, 612 So.2d 1010 (La.App. 2d Cir.1993).
Plaintiffs introduced evidence of past medical expenses in the amount of $34,980.55. While stipulating to the authenticity of these bills, Wal-Mart reserved its objection to the necessity and/or relatedness of these expenses. Notwithstanding defendant's objections, we note that Wal-Mart offered no evidence to show that any of the expenses were unrelated and/or unnecessary. In light of the uncontroverted evidence of medical bills totaling $34,908.55, the jury's award of only $25,000 is clear error. We will therefore amend the award accordingly.

Future Medical Expenses
Wal-Mart takes issue with the jury's award of $31,000 to Mrs. Brandao for future medical expenses. According to defendant, this award is speculative and totally unsupported by the medical evidence presented at trial. On the other hand, plaintiffs assert that the jury did not abuse its discretion by making such an award.
Future medical expenses, like any other damages, must be established with some degree of certainty and such an award cannot be predicated on mere speculation. Kennedy v. Thomas, 34,530 (La. App. 2d Cir.04/04/01), 784 So.2d 692; Quinn, supra. Awards for future medical expenses that may or may not be incurred require medical testimony that they are indicated and their probable costs. Id. The plaintiff must show that more probably *1048 than not, these expenses will be incurred. Id.; Morrison v. Kappa Alpha PSI Fraternity, 31805 (La.App. 2d Cir.05/07/99), 738 So.2d 1105, writs denied, 99-1668, 99-1607, 99-1622 (La.09/24/99), 747 So.2d 1120, 749 So.2d 634, 635.
As noted above, in order to recover future medical expenses, the plaintiff must set out the probable cost; when the exact value is not provided, past medical expenses may be used to reach an amount that reasonable minds could not disagree would be required. Quinn, supra; Domangue v. Mr. Gatti's, Inc., 93-2392 (La. App. 1st Cir.06/23/95), 657 So.2d 689.
Dr. Harju was asked to calculate and testify regarding anticipated annualized future medical expenses of Mrs. Brandao based upon the amount of medical expenses she incurred prior to trial. Dr. Harju's testimony was based upon the assumption that, in the future, Mrs. Brandao would incur medical expenses at the same rate she did for the three and one-half years between the date of the accident and the time of trial. The parties stipulated that Mrs. Brandao's prescription medicine expenses for the 3½ year period totaled $2,843.02. Dr. Harju calculated that Mrs. Brandao's future prescription expenses alone would be $14,496 and projected that future medical expenses annualized for her life expectancy and reduced for present value would be $267,899.
Dr. McBeath, Mrs. Brandao's treating physician, strongly recommended that she undergo cognitive rehabilitation. As of trial, Mrs. Brandao had begun some cognitive therapy under Dr. McBeath's direction. Dr. Goebel, Wal-Mart's expert in neuropsychology, testified that a patient such as Mrs. Brandao could benefit from cognitive rehabilitation and noted that this treatment could sometimes take on or two years.
In light of the above, and considering that the jury was presented evidence that Mrs. Brandao's past medical expenses were approximately $35,000, we cannot say that the jury erred in awarding Mrs. Brandao $31,000 for future medical expenses.

Conclusion
For the reasons set forth above, the judgment of the trial court is amended to award plaintiff, Timothy Brandao, $225,000 for loss of consortium and to increase the past medical expenses awarded to plaintiff, Theresa Brandao, from $25,000 to $34,908.55. In all other respects, the judgment is affirmed. All costs, here and below, are assessed to defendant, Wal-Mart Stores, Inc.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, GASKINS, and DREW, JJ.
Rehearing denied.