784 So.2d 692 (2001)
Johnny L. KENNEDY, et al., Plaintiffs-Appellants,
v.
Rayburn E. THOMAS, et al., Defendants-Appellees.
No. 34,530-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2001.
*694 Robert A. Jahnke, Edward O. Kernaghan, Shreveport, Counsel for Appellants.
*695 Lunn, Irion, Johnson, Salley & Carlisle, by Jack E. Carlisle, Jr., Shreveport, Counsel for Appellees.
Before NORRIS, GASKINS and KOSTELKA, JJ.
GASKINS, J.
The plaintiffs, Johnny and Janice P. Kennedy, individually and on behalf of their minor son, Joshua Kennedy, appeal from a jury verdict and trial court judgment arising from injuries sustained by Joshua at the Happy Day Nursery and Daycare Center. For the following reasons, we affirm the jury verdict and trial court judgment.

FACTS
The plaintiffs are the parents of Joshua Kennedy, a four-year-old child who attended the Happy Day Nursery and Daycare Center. On June 12, 1996, a piece of furniture, possibly a locker in the gymnasium, fell on Joshua, crushing his nose. Following the injury, the child had five surgeries on his nose. His treating physician thought that he would need at least seven more surgeries as he matured. The plaintiffs filed suit, individually and on behalf of their minor son, against the day care and other individuals connected with that enterprise. The defendants stipulated liability. The issue of quantum was tried before a jury.
At trial, Joshua's treating ear, nose, and throat physician, Dr. James Robinson, testified. He stated that he first saw the child in the hospital emergency room on the day of the injury and that Joshua had the most severe injury he had ever seen in a pediatric patient. In the accident, Joshua sustained a comminuted fracture of his nose. His nasal bone was in 7-10 fragments. Surgery was done to repair the nose on June 18, 1997. The surgery had been delayed to allow a reduction in swelling. A couple of weeks after the repair, Joshua was again placed under anesthesia in order to remove nasal packing. This constituted the second surgery. In January 1997, surgery was performed to divide scar tissue that had formed in the nose. In September 1997, Joshua's tonsils and adenoids were removed. In May 1999, surgery was again performed to allow the nose to drain better. Although noting that the child's nose appeared normal at the time of trial, Dr. Robinson opined that the growth plates in Joshua's nose had been destroyed in the accident. He stated that the nose would not grow normally and, as an adult, Joshua would be left with a small nose with an upturned, pig-like appearance. In addition to the cosmetic deformity, he would be more susceptible to airway obstructions. It was noted that Joshua has nasal allergies which were not caused by the injury. According to Dr. Robinson, Joshua would frequently require antihistamines, decongestants and antibiotics for the remainder of his life.
Dr. Robert Thornton, also an ear, nose and throat specialist, examined Joshua on behalf of the defendants. Dr. Thornton testified that the nose had been repaired very well. He noted that the septum was still deviated and Joshua would need two additional surgeries after puberty to alleviate the problem. He stated that this could cost up to $20,000.00. However, Dr. Thornton opined that, because the fractures were well repaired, the nose would continue to grow normally. He did not think that the nose would be cosmetically deformed.
Janice Kennedy, Joshua's mother, testified that since the accident, the child has the sniffles all the time and has headaches 3 to 4 times per week. He also frequently has dark circles and puffiness under his eyes. Joshua has difficulty breathing at *696 night and he snores. Mrs. Kennedy stated that since the accident, Joshua is very protective of his face, but has played baseball and basketball.
On January 26, 2000, the jury returned a unanimous verdict against the defendants[1] and in favor of the plaintiffs in the following amounts:

Past medical expenses ..................... $26,023.14
Future medical expenses ................... $20,000.00
Past and future physical pain and
 suffering ............................... $25,000.00
Past and future mental pain and
 suffering ............................... $ 8,000.00
Loss of gratification of intellectual
 or physical enjoyment ................... $ 5,000.00
Permanent disability ...................... $ 2,500.00
Loss of future economic opportunity ....... $ 2,500.00
Loss of consortium to
 Johnny Kennedy .......................... $ 5,000.00
Loss of consortium to
 Janice P. Kennedy ....................... $10,000.00

The total amount of damages assessed against the defendants was $104,023.14.
The plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV), arguing that the awards for past and future physical pain and suffering, past and future mental pain and suffering, and permanent disability were inadequate. They argued that the awards should be increased to $200,000.00, $50,000.00, and $50,000.00, respectively. On June 1, 2000, the trial court denied the motion for JNOV, stating:
Although the undersigned judge would have assessed monetary damages as to each category at a slightly higher amount, this judge is not permitted to act as the 13th juror. There is, in fact and law, a rational basis for the jury to have arrived at its verdict as set forth in the Judgment filed April 28, 2000. The motion is hereby denied.
The plaintiffs appealed devolutively from the jury verdict and judgment and the trial court decision denying the motion for JNOV. According to the plaintiffs, the trial court erred in refusing to instruct the jury that the testimony of a treating physician should be given greater weight than that of an independent medical examiner and that the trial court erred in denying the motion for JNOV. The plaintiffs also attack as inadequate the jury awards for future medical expenses, past and future physical pain and suffering, past and future mental pain and suffering, and permanent disability.

JURY INSTRUCTIONS
The plaintiffs argue that the trial court erred in refusing to include a jury instruction regarding the weight to be given the testimony of a treating physician.
The plaintiffs requested an instruction that the opinion of the treating physician who has been in close contact with the patient over a long period of time is entitled to greater weight than that of an equally well-qualified physician who has not had the benefit of close and frequent contact and examination. The trial judge declined to give this instruction, finding that it made a comment on the evidence.
La. C.C.P. art. 1793 provides in pertinent part:
A. At the close of the evidence, or at such earlier time as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests.
B. The court shall inform the parties of its proposed action on the written requests *697 and shall also inform the parties of the instructions it intends to give to the jury at the close of the evidence within a reasonable time prior to their arguments to the jury.
Adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La.App. 3d Cir.1991); Evangeline Farmers Cooperative v. Fontenot, 565 So.2d 1040 (La.App. 3d Cir.1990); Laborde v. Velsicol, 474 So.2d 1320 (La.App. 3d Cir.1985), writs denied, 480 So.2d 738 (La. 1986). The trial court is not required to give the precise instruction submitted by a litigant. The court need only give instructions that properly reflect the applicable law and adequately convey the issues to the jury. To determine the sufficiency of a jury charge, all charges should be read together as a whole. Luman v. Highlands Insurance Company, 25,445 (La. App.2d Cir.2/23/94), 632 So.2d 910. If the court gives misleading, confusing instructions or omits an applicable essential legal principle, then such instructions do not adequately set forth the law and may constitute reversible error. Evangeline Farmers Cooperative v. Fontenot, supra.
The standard of appellate review is that the mere discovery of an error in the trial judge's instructions does not itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. Lincecum v. Missouri Pacific Railroad Company, 452 So.2d 1182 (La.App. 1st Cir.1984), writ denied, 458 So.2d 476 (La.1984).
Appellate courts exercise great restraint in overturning a jury verdict on the basis of erroneous instructions. The pertinent inquiry in making such a determination is whether the jury was misled to such an extent as to prevent it from doing justice. The manifest error standard of review may not be ignored unless the instructions were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and facts. Creel v. S.A. Tarver & Son Tractor Company, Inc., 537 So.2d 752 (La.App. 1st Cir.1988).
The plaintiffs point out that only Dr. Robinson and Dr. Thornton gave expert medical testimony. Their only disagreement concerned the number of future surgeries and the extent of any future cosmetic defect. Dr. Robinson, the treating physician, felt that Joshua would need up to seven future surgeries, whereas Dr. Thornton thought fewer procedures would be necessary. Dr. Robinson opined that Joshua's nose would never be cosmetically or functionally normal, whereas Dr. Thornton agreed there would be functional impairment, but did not think there would be any cosmetic deformity.
Because Dr. Robinson was the treating physician, the plaintiffs claim that under McCartney v. Columbia Heights Nursing Home, Inc., 25,710 (La.App.2d Cir.3/30/94), 634 So.2d 927, the trial court should have instructed the jury that they were required to give Dr. Robinson's testimony and opinion more weight than that of Dr. Thornton. We do not find that McCartney stands for the proposition that, in all instances, the treating physician's opinion must prevail over that of other medical experts. Where the testimony of medical experts conflicts, it is permissible for the trier of fact to give greater weight to the testimony of a treating physician over the testimony of a doctor whose examination was made solely for the purpose of giving expert trial testimony regarding a patient's condition. Turner v. City of Monroe, 25,554 (La.App.2d Cir.3/30/94), 634 So.2d 981. However, the fact finder is *698 not precluded from making determinations regarding the credibility of witnesses and respect should be given to those conclusions. After weighing and evaluating medical testimony, the trier of fact may accept or reject the opinion expressed by the medical expert. The trier of fact should evaluate the expert testimony by the same rules which are applicable to other witnesses and the trial court is not bound by expert testimony. McCartney v. Columbia Heights Nursing Home, Inc., supra. The reviewing court is mandated not to substitute its own evaluations and inferences for those of the trier of fact. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. McCartney v. Columbia Heights Nursing Home, Inc., supra.
We have examined the jury instructions in their entirety and conclude that the trial court adequately and correctly instructed the jury as to the law regarding the evaluation of credibility of expert medical witnesses. The trial court did not err in refusing to give the jury instruction requested by the plaintiffs. Accordingly, we reject the plaintiffs' argument on this issue.

JNOV
The plaintiffs argue that the trial court erred in failing to grant their motion for JNOV, attacking certain elements of the damage award as inadequate. They base this argument on the trial court's statement in the denial of the JNOV that it would have awarded higher monetary damages. The plaintiffs contend that the trial court should have granted the JNOV and conducted a de novo review of the damages. This argument is without merit.
A JNOV is a procedural device authorized by La. C.C.P. art. 1811 whereby the trial court may correct a legally erroneous verdict by modifying fault or damages, or both, that the jury may have assessed. Matthews v. Arkla Lubricants, Inc., 32,121 (La.App.2d Cir.8/18/99), 740 So.2d 787; Greene v. Fox Crossing, Inc., 32,774 (La.App.2d Cir.3/1/00), 754 So.2d 339, writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1108. The motion should be granted only when the evidence points so strongly in favor of the party seeking the JNOV that reasonable men could not reach different conclusions. Greene v. Fox Crossing, Inc., supra.
The JNOV should not be granted merely when there is a preponderance of evidence for the mover. If the opposing evidence is of such quality and weight that reasonable men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all inferences or factual questions should be resolved in favor of the non-moving party. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991); Craighead v. Preferred Risk Mutual Insurance Company, 33,731 (La.App.2d Cir.8/25/00), 769 So.2d 112, writ denied, 2000-2946 (La.12/15/00), 777 So.2d 1230.
The damage awards were based upon the conflicting testimony of the expert doctors. Dr. Robinson felt that Joshua would require up to seven future surgeries, whereas Dr. Thornton thought more probably that only two additional surgical procedures would be necessary. Dr. Robinson felt that Joshua would have permanent cosmetic and functional impairment of the nose. Dr. Thornton did not think that the nose would be cosmetically impaired. The facts and evidence by the defendants was *699 of such quality and weight that reasonable men in the exercise of impartial judgment could reach different conclusions. Therefore, the trial court did not err in refusing to grant the motion for JNOV.

DAMAGES
General damages are those which may not be fixed with pecuniary exactitude. A trier of fact has great discretion in fixing general damages. A trial court's award of general damages should not be overturned by a reviewing court absent an abuse of discretion. Greene v. Fox Crossing, Inc., supra.
General damages involve mental or physical pain or suffering, inconvenience, loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. When damages are insusceptible of precise measurement, much discretion is left to the trial court for the reasonable assessment of these damages. La. C.C. art.1999. Only if an award is first found to be inadequate or excessive on the facts of the particular case may the appellate court refer to the awards in similar cases. Greene v. Fox Crossing, Inc., supra.
The trial court has much discretion in the assessment of damages in tort cases. La. C.C. art 2324.1. The discretion vested in the trier of fact is great, even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Kose v. Cablevision of Shreveport, 32,855 (La.App.2d Cir.4/5/00), 755 So.2d 1039, writ denied, XXXX-XXXX (La.6/16/00), 765 So.2d 340. The proper procedure for examining whether an award is excessive is to determine whether the amount can be supported under the interpretation of the evidence most favorable to the plaintiff, which reasonably could have been made by the trier of fact; likewise, to determine if an award is inadequate, the evidence must be viewed in the light most favorable to the defendant. Kose v. Cablevision of Shreveport, supra.
Future medical expenses, like any other damages, must be established with some degree of certainty and such an award cannot be predicated on mere speculation. Awards for future medical expenses that may or may not be incurred require medical testimony that they are indicated and their probable costs. The plaintiff must show that more probably than not, these expenses will be incurred. Quinn v. Wal-Mart Stores, Inc., 34,280 (La.App.2d Cir.12/6/00), 774 So.2d 1093, writ denied, XXXX-XXXX (La.3/9/01), 786 So.2d 735; Hammock ex rel. Thompson v. Louisiana State University Medical Center in Shreveport, 34,086 (La.App.2d Cir.11/1/00), 772 So.2d 306.
In their brief, the plaintiffs first attack the award of $20,000.00 for future surgeries. They urge that, because Dr. Robinson testified that Joshua would need seven additional surgeries at a cost of $5,000.00 each, the jury should have awarded $35,000.00 for this element of damages. We find that the jury did not err in the amount awarded for future medical expenses. The award for this item of damages was based upon the jury's credibility determination between the testimony and opinions presented by Dr. Robinson and Dr. Thornton. Dr. Thornton testified that the repair of Joshua's nose was extremely well done. He also stated that, while this accident occurred when the child was four years old, he was six years old at trial and his nose was normal in appearance. The growth of the nose did not seem to be impaired. As opposed to Dr. *700 Robinson's opinion that seven more surgical procedures would be required, Dr. Thornton stated that fewer procedures would be required at a total cost of $20,000.00. This is the amount awarded by the jury for future medical expenses. We do not find that the trial court abused its discretion in making this award based upon the opinion given by Dr. Thornton.
Similarly, we do not find that the jury abused its discretion with regard to the remaining elements of general damages awarded. The plaintiffs note that the total amount awarded for general damages was $43,000.00 and argue that this amount is "woefully inadequate." The plaintiffs contend that the award of $25,000.00 for future physical pain and suffering should be increased to $200,000.00. The plaintiffs further assert that the award of $8,000 .00 for past and future mental pain and suffering should be raised to $50,000.00 and the $2,500.00 award for permanent disability should be raised to at least $50,000.00, bringing the total award for general damages to $300,000.00. They contend that the general damage award should be increased because Joshua suffered a severe and painful injury which has not yet been fully corrected and which will cause pain and disfigurement in the future.
As stated above, Joshua had a severe nasal fracture which was expertly repaired by Dr. Robinson. Additional procedures were also done to remove packing and scar tissue and to improve drainage. The jury could have determined that the surgery to remove Joshua's tonsils and adenoids was not necessitated by the accident. The jury apparently accepted the testimony of Dr. Thornton that Joshua's nose will continue to grow normally and will more likely only require two more surgical procedures as a result of this accident. There was testimony that, at the time of trial, the nose was not cosmetically deformed and, although the child had difficulty from his deviated septum, he also suffered due to nasal allergies which were not caused by this accident. Viewing the evidence in the light most favorable to the defendants, we do not find that the jury abused its vast discretion in the amounts award to Joshua in general damages.

CONCLUSION
For the reasons stated above, we affirm the judgments of the jury and the trial court in favor of the defendants, Child-quest, Inc. d/b/a Happy Day Nursery and Daycare Center and Reliance Insurance Company. Costs in this court are assessed to the plaintiffs, Johnny and Janice P. Kennedy.
AFFIRMED.
NORRIS, C.J., dissents with written reasons.
NORRIS, C.J., dissenting.
I respectfully dissent. With due deference to the jury's broad discretion in fixing damages, I cannot agree that the instant general damage award is within the discretionary range for these injuries. Dr. James Robinson described young Joshua's condition as "the most severe injury I have ever seen in a pediatric patient" and projected a lifetime susceptibility to sinusitis. The defense's expert, Dr. Thornton, did not really refute these observations. On this record, the lowest affirmable amount for physical pain and suffering, past and future, would be $50,000, and for mental anguish and suffering, past and future, $25,000.
For these reasons, I respectfully dissent.
NOTES
[1] Judgment was rendered against Childquest, Inc. d/b/a Happy Day Nursery and Daycare Center and Reliance Insurance Company. All claims against Rayburn E. Thomas and Wanda Thomas, individually and d/b/a Happy Day Nursery and Daycare Center, Happy Day Nursery and Daycare Center, Inc. Ray Thomas Enterprises, Inc. and Rayburn E. Thomas and Wanda Thomas d/b/a/ Happy Day Child Development Center were dismissed with prejudice.