LWALTER J. ROTHSCHILD, Judge.
This case arises from a motor vehicle accident that occurred on January 21, 2001 at the intersection of Manhattan Blvd. and Gretna Blvd. in Jefferson Parish. The accident involved two vehicles, one driven by the plaintiff, Edward Ford, and the *614 other driven by the defendant, Craig Ba-zile. Edward Ford’s brother, Elbert Ford, was a passenger in the vehicle driven by Edward Ford.
On September 18, 2001, Edward and Elbert Ford, filed suit against Mr. Bazile and his insurer, Nationwide Assurance Company (“Nationwide”), for damages arising from this accident.[1] Trial of this matter was held on April 23, 2003. On May 16, 2003, the trial court rendered a judgment in favor of the plaintiffs, awarding $24,229.00 in damages to Edward Ford, and $10,554.86 in damages to Elbert Ford. Nationwide and Mr. Bazile filed a suspensive appeal from .the trial court’s judgment in favor of Edward Ford. The judgment in favor of Elbert Ford has been satisfied and is not at issue in this appeal.

J¿FACTS

The Accident

At trial, Edward Ford testified that on January 21, 2001, he was driving on Manhattan Blvd., made a left turn onto Gretna Blvd., and stopped at a red light at the intersection of Manhattan and Gretna Blvd. He was stopped in the left lane and there was an SUV driven by Scott Lott that was stopped next to him in the right lane. When the light turned green, both Mr. Ford and Mr. Lott waited for about five seconds and then started to go. Mr. Lott slammed on his brakes, but as Mr. Ford continued to drive through the intersection, the front right side of his vehicle was struck by a vehicle driven by Craig Bazile. Mr. Ford stated that he did not see that Mr. Bazile was running the red light because the SUV to his right obstructed his view.
Edward Ford’s brother, Elbert Ford, testified that he was a passenger in Mr. Ford’s vehicle when the accident occurred. He stated that they were stopped at a red light at Manhattan and Gretna Blvd, and Edward pulled off approximately five or six seconds after it turned green. The vehicle on the right side of them started to go at the same time as Edward did, but it stopped suddenly. Edward continued to go and they were hit by the defendant’s vehicle. Elbert testified that the driver of the vehicle to the right of them, Mr. Lott, indicated that Mr. Bazile was at fault for the accident and offered to be a witness at trial. Elbert stated that he was looking straight ahead when Edward pulled off from the intersection and he does not know if Edward looked to the right prior to pulling off. He testified that the collision occurred almost immediately after they pulled off.
Deputy Raymond Gorman of the Jefferson Parish Sheriffs Office responded to the accident, interviewed people, and took statements. Based on his investigation, he concluded that Mr. Bazile disregarded the traffic control signal, but he did not issue him a ticket because he cooperated.
| ¿Injuries
Edward Ford testified that his leg and shoulder came into contact with the interi- or of his vehicle during the collision, and he had pain in his right leg after the accident. On the day after the accident, he went to the emergency room at West Jefferson Medical Center because he was having pain in his right leg and shoulder. The doctor gave him a prescription, and Mr. Ford began attending physical thera *615 py approximately eight days after the accident.
The records presented by Mr. Ford indicate that he was treated for his injuries from the day after the accident until July 2001. Within a few months after the accident, he had an MRI of his knee and was told that “something was wrong” with it. Although he admitted that he did not introduce any evidence of medical treatment between July 2001, and December 2002, Mr. Ford asserts that he saw a doctor through his wife’s insurance during that time. In December 2002, he went to Westside Orthopaedic Clinic because he was having problems with his leg. Mr. Ford testified that the doctor told him that he had “some kind of stuff’ wrong with the back of his knee, gave him a shot and a brace, and another MRI of his knee was done. He was told to go back to physical therapy at West Jefferson and he did so.
Mr. Ford testified that his leg continues to hurt sometimes and that he has to have another MRI of his knee. When he was discharged by the doctor at Westbank Health Care, he stated that his leg was not hurting, but it began to hurt again after that date. He testified that his leg has not stopped hurting for any extended period of time since the accident. He contends that the injury to his knee has affected his lifestyle. His health was good before the accident, but he cannot play basketball or football with his kids anymore, and he can no longer run.
Edward Ford’s medical records reveal the following. On January 22, 2001, he went to the emergency room at West Jefferson Medical Center where he complained of knee and lower leg pain. Thereafter, he was seen by Dr. LaCour at |RWestbank Health Care Center on February 1, 2001 and was diagnosed with a right knee sprain and a right ankle sprain and was advised to schedule an MRI and physical therapy. He was also given a prescription for Vicodin. On March 7, 2001 and March 14, 2001, he saw Dr. Rowell at Westbank Health Care Center complaining of right shoulder pain, right arm numbness, and right knee pain. On both occasions, Dr. Rowell advised him to continue physical therapy.
On April 12, 2001, an MRI was taken of Mr. Ford’s right knee. Dr. Taylor of Crescent City MRI reviewed the MRI and concluded that grade III-IV chondromala-cia of the posterior patella was evident, and there was possibly a small intra-men-iscal tear. On April 20, 2001, he returned to see Dr. Rowell for right knee pain, but indicated that he no longer had shoulder pain. Dr. Rowell’s report indicates that the MRI of his right knee showed grade III-IV chondromalacia, and Dr. Rowell referred him to an orthopedic surgeon. On May 7, 2001, he saw Dr. Rowell for right shoulder pain, right knee pain, and right hand numbness. He saw Dr. Rowell again on June 8, 2001 for knee pain and stated that his shoulder and hand symptoms had improved. Finally, he saw Dr. Rowell on July 16, 2001 and indicated that he no longer had pain in his right shoulder or knee, but his knee would give out occasionally. Dr. Rowell discharged him and referred him to an orthopedic surgeon.
On December 18, 2002, Mr. Ford saw Dr. Sanchez at Westside Orthopaedic Clinic. Dr. Sanchez’s assessment was that Mr. Ford had internal derangement of the right knee and chondromalacia of the pa-tellofemoral joint. Dr. Sanchez also ordered another MRI in order to compare it to the previous MRI of his right knee. An MRI of Mr. Ford’s right knee was performed on January 3, 2003, and a report by Dr. Hunter of MRI of Louisiana indicates that the results were negative for internal derangement and there was no medial or lateral meniscal tear. The re *616 port | (farther indicates that the articular and patelloferaoral joint cartilage appeared within normal limits.
Dr. Michael Howard was called to testify, and he was accepted as an expert in general medicine. Although he did not personally examine the plaintiff or review the MRI’s, he reviewed the doctors’ notes and generated a report at the end of Mr. Ford’s treatment with Drs. LaCour and Rowell. Based on his review of the medical records, Dr. Howard concluded that Mr. Ford’s injuries were caused by the January 21, 2001 accident. He explained that chondromalacia of the patella is softening of cartilage that surrounds the patella. He stated that it is often a combination of degenerative changes plus an area that has recently been traumatized. It is difficult to tell if chondromalacia is present before an accident because it may not be symptomatic until after the area is traumatized.

DISCUSSION

On appeal, the defendants, Nationwide Assurance Company and Craig Bazile, assert two assignments of error. In the first assignment of error, they argue that the trial court erred in not apportioning fault to Edward Ford. They assert that Edward is comparatively at fault for the accident, because he did not ascertain whether vehicles were coming from his right prior to entering the intersection, and there was no definite testimony that, the SUV to the right of his vehicle obstructed Edward Ford’s vision. Further, Deputy Gorman testified that Mr. Lott told him that he did not move forward when the light turned green, though the Ford brothers both testified that he moved forward and then stopped. The defendants contend that the testimony of Deputy Gorman was more credible than the testimony of Edward and Elbert Ford.
An appellate court is not permitted to set aside the trial court’s factual findings, unless the findings are clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Ramirez v. Girouard, 02-887 (La.App. 5 Cir. 12/30/02), 836 So.2d 549, 551. When factual findings are based on the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings. Schexnayder v. Exxon Pipeline Company, 01-1236 (La.App. 5 Cir. 3/13/02), 815 So.2d 156, 160. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. LeBlanc v. Allstate Insurance Company, et al., 00-1128 (La.App. 5 Cir. 11/28/00), 772 So.2d 400, 403, unit denied, 00-3522 (La.2/9/01), 785 So.2d 831. The manifest error standard also applies to the trial court’s apportionment of percentages of fault. Lapeyrouse v. Wal-Mart Stores, Inc., 98G547 (La.App. 5 Cir. 12/16/98), 725 So.2d 61, 65, unit denied, 99-140 (La.3/12/99), 739 So.2d 209.
In his reasons for judgment, the trial judge stated in part, “the evidence presented failed to establish that Mr. Ford breached any duties by proceeding forward. The evidence indicated that Mr. Bazile caused the accident and there was insufficient evidence to establish any comparative fault on the part of the plaintiffs.” We agree with the trial court.
Both Edward and Elbert Ford testified that when the traffic light turned green, they waited about five seconds before proceeding forward. They both stated that Mr. Lott also started to go, but stopped shortly thereafter. They testified that Edward- Ford continued to drive into the intersection and was struck by Mr. Bazile’s vehicle, after Mr. Bazile ran a red light. Although Deputy Gorman testified that Mr. Lott did not proceed forward when *617 the light turned green, he investigated the accident and believed that Mr. Bazile disregarded the traffic control signal and caused the accident. Neither the defendant driver, Craig Bazile, nor the driver of the SUV, Scott Lott, was called to testify.
The testimony was undisputed that Mr. Ford waited a few seconds after the light turned green before entering the intersection, and Mr. Bazile disregarded a |8red light and struck Mr. Ford’s vehicle. Edward Ford stated that he did not see Mr. Bazile running the red light because the SUV to his right obstructed his view, and Elbert Ford agreed that the vehicle to the right obstructed the view, though he did not know if Edward looked to the right or not.
Considering the testimony and evidence in this case, we conclude that the trial judge’s finding that Mr. Bazile was solely at fault for the accident is supported by the record, reasonable, and not manifestly erroneous. Accordingly, this assignment of error is without merit.
In their second assignment of error, the defendants contend that the trial court committed manifest error in awarding Edward Ford $20,000.00 in general damages. They argue that the impact of this accident did not cause significant damage to either vehicle, and Mr. Ford’s injuries were minor. The defendants assert that the trial court ignored the MRI performed in January 2003, which showed no evidence of chondromalacia, meniscal tear, or internal derangement of the knee.
The trial judge awarded Edward Ford $4,229.00 in special damages and $20,000.00 in general damages. In his reasons for judgment, the trial judge noted that Mr. Ford was in good health prior to the accident. He stated that the $20,000.00 award was for five and a half months of treatment for his injuries, as well as the chondromalacia condition in his knee, which has limited his ability to engage in many activities that he enjoyed prior to the accident.
General damages are those which cannot be fixed with pecuniary exactitude. Kennedy v. Thomas, 34,530 (La. App. 2 Cir. 4/4/01), 784 So.2d 692, 699. They include mental and physical pain or suffering, inconvenience, loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle that cannot be definitively measured in monetary terms. Id. The discretion vested in the trier of fact in awarding general damages is great and even vast, so that the appellate court | ashould rarely disturb an award of general damages. Matos v. Clarendon National Insurance Company, et al., 00-2814 (La. App. 1 Cir. 2/15/02), 808 So.2d 841, 845. A general damage award should not be disturbed absent a clear abuse of discretion. Id. at 846. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the trier of fact’s exercise of discretion. Wainwright v. Fontenot, 00-492 (La.10/17/00), 774 So.2d 70, 74.
Considering the testimony and evidence, we cannot say that the trial judge abused his vast discretion when he awarded Edward Ford $20,000.00 in general dames. At trial, Mr. Ford testified regarding his medical treatment, and he stated that his leg has not stopped hurting for any extended period of time since the accident. He further testified that his lifestyle has been affected by the accident, and he cannot run or play basketball or football with his kids anymore.
The record reveals that Mr. Ford was treated for his injuries from January 2001 to July 2001. The MRI of his knee taken in April 2001 revealed grade III-IV chon-dromalacia and a possible intra-meniscal *618 tear. When Mr. Ford sought medical treatment again in December 2002, Dr. Sanchez’s assessment was that Mr. Ford had internal derangement of the right knee and chondromalacia of the patello-femoral joint. However, according to Dr. Hunter of MRI of Louisiana, an MRI taken January 3, 2003 did not reveal internal derangement of the knee and the patello-femoral joint cartilage appeared normal.
After considering the evidence and assessing the credibility of the witnesses, the trial court concluded that Edward Ford sustained $20,000.00 in general damages. While this award may be a bit high, we cannot say that the trial court abused its great discretion. Accordingly, we affirm this award, and this assignment of error is without merit.

|inDECREE

For the reasons set forth above, we affirm the judgment of the trial court.

AFFIRMED.

. The plaintiffs also named Maty Jo Olson, who is a claims adjuster for Nationwide Assurance Company, as a defendant and asserted bad faith claims against her. However, these claims were dismissed via a partial peremptory exception of no right of action. Additionally, Allstate Insurance Company, as Mr. Ford’s uninsured/underinsured motorist coverage carrier, was named as a defendant. However, the judgment against Allstate has been satisfied and is not at issue in this appeal.