STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

DANIEL K. MURCHISON, ET AL.

VERSUS

LYNDON PROPERTY INS. CO., ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 99-5712
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Michael G. Sullivan, Judges.

AFFIRMED IN PART; REVERSED IN PART;
AMENDED IN PART; AND RENDERED.

Nathan A. Cormie
Nathan A. Cormie & Associates
P. O. Box 1626
Lake Charles, LA 70602
Telephone: (337) 439-2422
COUNSEL FOR:
        Plaintiffs/Appellees - Daniel K. Murchison and Ellen Murchison

Larry A. Roach, Jr.
Larry A. Roach, Inc.
2917 Ryan Street
Lake Charles, LA 70601
Telephone: (337) 433-8504
COUNSEL FOR:
        Plaintiffs/Appellees - Daniel K. Murchison and Ellen Murchison

**Christopher Paul Ieyoub**
**Plauche, Smith & Nieset**
**P. O. Drawer 1705**
**Lake Charles, LA 70602**
**Telephone:  (337) 436-0522**
**COUNSEL FOR:**
      **Defendants/Appellants - City of Lake Charles and Timothy**
      **Richards**

THIBODEAUX, Chief Judge.

In this personal injury claim arising out of an automobile accident case, defendants, Officer Timothy Richards (Officer Richards) and the City of Lake Charles, appeal the JNOV granted to plaintiffs, Daniel Murchison and his mother, Ellen Murchison, in which fault and damages were reapportioned in light of the jury verdict. Further, appellants request that the provisional grant of a new trial be reversed.

Officer Richards directed traffic at the intersection of McNeese and Common Streets in Lake Charles, Louisiana, after finding a truck stalled in the turn lane. Mr. Murchison proceeded through the intersection following Officer Richards' orders, at which point he was broadsided twice by oncoming traffic.

The record supports the JNOV in the reallocation of fault; however, we find the reallocation of damages is not supported. In addition, we find no basis for the conditional grant of a new trial. For the following reasons, we reverse in part; affirm in part; amend in part; and render our judgment.

I.

## ISSUES

We shall consider:

1) whether the JNOV was proper regarding the reallocation of fault and damages;

2) whether the trial judge should have recognized the stipulated credit of $4,037.29 towards the actual cash value of the plaintiff's mother's car; and,

3) whether the grant of a new trial was proper.

1

## II.

## FACTS

On September 10, 1998, after finding a truck stalled in the turn lane of the busy intersection, Officer Richards placed himself into the middle of the intersection of McNeese and Common Streets in Lake Charles, Louisiana and began directing traffic. The plaintiff, Mr. Murchison, operating a vehicle owned by his mother, was heading north on Common Street. Officer Richards positioned himself on McNeese Street and could not see the traffic signal overhead. Officer Richards proceeded to direct traffic eastbound to westbound, westbound to eastbound, and then southbound to northbound. Despite the fact that the traffic signal above was red, Officer Richards gave the northbound-to-southbound traffic the signal to proceed. Mr. Murchison heeded the officer's instruction and continued to cross the intersection. While turning, he was broadsided by a vehicle driven by Ms. Gloria Istre, and a few seconds later, broadsided by another vehicle driven by Ms. Donna Suire. Mr. Murchison claims injuries as a result of this accident, and brought suit against the City of Lake Charles, Officer Richards, Ms. Istre, and Ms. Suire.

The jury returned a verdict and assessed fault in the following percentages: City of Lake Charles and Officer Richards, twenty-eight percent (28%); Ms. Istre, twenty percent (20%); Ms. Suire, twenty percent (20%); and the plaintiff, Mr. Murchison, thirty-two percent (32%). The jury awarded damages of $16,954.00 for Mr. Murchison and $4,000.00 to his mother for the actual cash value of her car. Mr. Murchison filed a JNOV and, in the alternative, a request for a new trial. The trial court granted the JNOV and reassessed fault in the following manner: City of Lake Charles and Officer Richards, seventy percent (70%); Ms. Istre, ten percent (10%); Ms. Suire's allocation of fault remained the same, twenty percent (20%); and

2

plaintiff, Mr. Murchison, zero percent (0%). The trial court assessed damages and awarded $151,842.83 for medical bills, $20,000.00 for loss of enjoyment of life, $100,000.00 for pain and suffering, and $200,000.00 for loss of future earning capacity. In the alternative, the trial court granted conditionally a new trial.

Defendants-appellants assert that the trial judge abused its discretion and ignored the JNOV standard in reallocating fault and damages. In addition, they ask the JNOV be amended to include the stipulated damage award in the amount of $4,037.29 for damages paid to Ellen Murchison for her vehicle. They further request that the conditional grant of a new trial be reversed.

III.

## LAW AND DISCUSSION

Louisiana Code of Civil Procedure Article 1811 controls the use of a judgment notwithstanding the verdict (JNOV). Although the Article does not specify the grounds on which a trial judge may grant a JNOV, the supreme court in *Joseph v. Broussard Rice Mill*, 00-628 (La. 10/30/00), 772 So.2d 94, sets forth the criteria in determining when a JNOV is proper. A JNOV is proper when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. *Id*. If the JNOV is found to be proper, the appellate court reviews the JNOV using the manifest error standard of review. *Davis v. Wal-Mart Stores, Inc.*, 00-445, p. 5 (La. 11/28/00), 774 So.2d 84, 89.

### *Allocation of Fault*

On review of the record, appellate courts use the same criteria utilized by a trial judge in determining whether the trial judge erred in granting the JNOV to

3

the jury's apportionment of fault. Defendants contend that the trial court erred in its reallocation of fault, particularly the finding that Mr. Murchison had no fault and the consequent lowering of his percentage to zero (0%). In this case, we must ask whether the facts and inferences point so strongly and overwhelmingly in favor of Mr. Murchison that reasonable persons could not arrive at a contrary verdict. We find the trial court properly granted plaintiff's motion for JNOV, reversing the jury's allocation of fault.

We agree with the trial court in finding that there was no comparative negligence on the part of the plaintiff, Mr. Murchison. Louisiana Revised Statutes 32:56(A) clearly states, "No person shall fail or refuse to comply with any lawful order or direction of any police officer or weights and standards police officer invested by law with authority to direct, control, or regulate traffic." Furthermore, in *Monceaux v. Jennings Rice Drier, Inc.*, 590 So.2d 672, 675 (La.App. 3 Cir. 1991), this court explained that when a law enforcement officer becomes aware of a dangerous traffic situation, he has the affirmative duty to see the motorists are not subjected to unreasonable risks of harm. Believing that he was obeying the law, Mr. Murchison followed the directive of Officer Richards. Mr. Murchison could not and did not know the risks involved as a result of proceeding through the intersection. Officer Richards placed himself in a position of authority and commanded the drivers, taking on the duty to protect motorists. Using the standard set forth, reasonable persons could not have found Mr. Murchison at fault.

In *Watson v. State Farm Fire and Casualty Insurance Co.,* 469 So.2d 967 (La.1985), the supreme court established that both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and

4

damages claimed are to be considered in determining percentages of fault. Moreover, the supreme court explained:

> In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstance which might require the actor to proceed in haste, without proper thought.

*Id*. at 974. Using the *Watson* factors, we agree that Officer Richards was proximately at fault in causing the accident. He was in the best position to deter this accident; in his capacity as a police officer he had a superior role during the event; his conduct created the risk; and, he was clearly under a duty to be aware of the dangers. In addition, he admitted he was negligent in his supervision of the intersection. With regard to Ms. Istre, the first driver to broadside Mr. Murchison, and Ms. Suire, the second driver, we agree that they have some responsibility in the fault of this accident. We find the record supports that Ms. Suire was in a better position to prevent the second hit and, therefore, more culpable then Ms. Istre. We find that the trial judge was not manifestly erroneous in his determination of fault.

### *Allocation of Damages*

Mr. Murchison suffered injuries from the accident on September 10, 1998. He visited a chiropractor to treat pain in his neck, back, and shoulder. He completed treatment with his chiropractor on December 15, 1998. Mr. Murchison also sought treatment from an orthopedist, Dr. R. Dale Bernauer. Although Dr. Bernauer found no problems in either Mr. Murchison's x-rays or his physical examination, he treated him for spraining and straining injuries until February 17, 1999, when he released the patient from his care. On March 3, 1999, Mr. Murchison

5

returned to the chiropractor after injuring his back while lifting a heavy box. At that time, he filled out a questionnaire stating that he could perform everyday activities normally, such as working, lifting, driving, and caring for himself.

On August 18, 1999, Mr. Murchison again returned to his chiropractor for treatment after suffering an injury while repairing the floor in his mother's home. Mr. Murchison sought treatment from Dr. Bernauer, who ordered MRI's of the plaintiff's neck and back. These MRI's, taken October 13, 1999, revealed no ruptured or damaged disks, but showed signs only of normal aging. On January 26, 2000, Dr. Bernauer saw Mr. Murchison once more for a check-up, and found his physical exam to be normal.

Mr. Murchison then began work at Car Care Automotive in March of 2000. He did not return to Dr. Bernauer until February 27, 2002, when he sought treatment for serious neck pain. On March 11, 2002, Dr. Bernauer ordered new MRI's, which revealed mild degenerative changes and, in addition, a herniated disk at C3-4. Dr. Bernauer operated on Mr. Murchison on August 6, 2002, and again on April 8, 2003 to treat the herniated disk and its related complications.

Although Mr. Murchison provided extensive descriptions of his painful conditions, including high blood pressure and depression, and also his loss of earnings, the central issue is whether or not his injury on September 10, 1998 caused the herniated disk at C3-4. Dr. Bernauer testified that the herniated disk itself required surgery, and then caused certain complications requiring further surgery; however, he admitted in his testimony that he could not medically conclude that the original accident caused the herniation at C3-4. In fact, Dr. Bernauer described the herniated disk at C3-4 to the patient, Mr. Murchison, as a "new finding."

6

Dr. James Perry examined Mr. Murchison only once, on behalf of the defendants. Dr. Perry noted that the initial MRI taken in October of 1999, a month after the accident, showed no damage. He concluded that the change causing the herniated disk occurred after the October 1999 MRI, and that therefore the accident on September 10, 1998, could not have caused the herniation. The jury awarded damages and medical expenses only with respect to Mr. Murchison's medical therapy through January 26, 2000, which represents his last visit with Dr Bernauer in reference to his normal October 1999 MRI. The award did not account for medical expenses incurred thereafter, suggesting that the jury agreed that the range of damages related to the accident ended in January of 2000. The trial court, however, disagreed with this assessment, stating in its oral reasons for judgment only that "the jurors could not have reached the conclusion they reached." The trial court believed that Mr. Murchison incurred the medical bills "in good faith," and increased the jury's award of medical expenses to include the herniated disk at C3-4 and its related treatment. The JNOV also increased the award for loss of enjoyment of life, future medical expenses, and pain and suffering.

The standard for reviewing a trial court's decision to grant JNOV on the issue of damages is whether

> "reasonable men in the exercise of impartial judgment could differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury's damage award should be reinstated. [I]f the answer is in the negative, then the trial court properly granted the JNOV."

*Manville v. Citizen*, 96-861, p. 6 (La.App. 3 Cir. 2/5/97), 689 So.2d 578, 584. In *Morgan v. Belanger*, 633 So.2d 173 (La.App. 1 Cir. 1993), the appellate court declined to find the trial court erred in refusing to grant a JNOV. Although the trial

7

court stated it disagreed with the jury's assessment of damages, and believed the jury disregarded the evidence, the court nevertheless conceded that the figures were within a reasonable range. The trial court "can make no credibility determinations, nor draw inferences therefrom." *Id.* at 175. The first circuit concluded that "[a] JNOV can be granted only where the trial court finds that reasonable minds could not reach a contrary verdict." *Id.*

In *Simoneaux v. Amoco Production Co.*, 02-1050 (La.App. 1 Cir. 2003), 860 So.2d 560, *writ denied*, 04-1 (La. 3/26/04), 871 So.2d 348, the defendants argued that, in granting a JNOV, the trial court "ignored the jury's acceptance of the defense witnesses' testimony, improperly substituted [its] own judgment for that of the jury, [made its] own credibility determinations" and increased the damages award from $375,000.00 to $12,000,000.00. The appellate court agreed, citing the rule that, in order to supersede properly the jury's determination of damages, the trial court must find that a reasonable jury could not have made the award. In *Simoneaux*, the jury heard substantial evidence on hazardous contamination of various sites, and the necessary costs of cleanup. The jury weighed the evidence and found the defense case credible. Because a reasonable jury could have made the damages assessment the *Simoneaux* jury made, "the judge was not empowered to substitute his own evaluation of the evidence to overturn the damages award." *Id.*

Appellate courts have considered the presence of conflicting expert testimony as a factor in assessing a trial court's decision to grant a JNOV. For instance, in *VaSalle v. Wal-Mart Stores, Inc.*, 01-462 (La. 11/28/01), 801 So.2d 331, several physicians offered conflicting testimony about the severity of the plaintiff's injuries and the causal relationship of her later physical condition to the injury that was the subject of the lawsuit. The jury assigned some damages, but their limited

8

award indicated they chose an award that would reflect only the damages clearly caused by the relevant injury. The supreme court held that the decision was one a reasonable and fair-minded jury could reach, noting that the plaintiff did not seek immediate treatment for her injuries, had suffered other injuries which could have caused her condition, and continued to work following her accident. Because ample evidence presented at trial supported the jury's verdict, the supreme court could not conclude the verdict was unreasonable, and held that the trial court erred in granting a JNOV. *Id.*

Similarly, in *Kennedy v. Thomas*, 34,530 (La.App. 2 Cir. 4/4/01), 784 So.2d 692, two physicians gave contradictory testimony about the necessity and cost of future surgeries, and also had different opinions about the permanence of impairment caused by the injuries. The jury rendered a more conservative award than desired, and the plaintiffs moved for JNOV. The appellate court found that the facts and evidence presented by the defendant were "of such quality and weight that reasonable men in the exercise of impartial judgment could reach different conclusions." *Id.* at 698-99. Thus, the jury must weigh the evidence, including testimony of expert witnesses, to assess the extent of damages caused by the injury which the plaintiff may recover.

In general, the testimony of the primary treating physician enjoys greater weight than an independent examiner who has seen the patient only for limited purposes of assessing their condition. *McKinney v. Coleman*, 36,958 (La.App. 2 Cir. 3/14/03), 839 So.2d 1240. The opinion of the treating physician, however, is not irrebuttable. The medical evidence must be weighed to determine "whether, based on the totality of the record, the jury was manifestly erroneous in accepting the expert testimony presented by defendants over that presented by plaintiff." *Miller v. Clout*,

03-91 (La. 10/21/03), 857 So.2d 458 (citing *Freeman v. Rew*, 557 So.2d 748 (La.App. 2 Cir. 1990)). Thus, the trier of fact is entitled to place more weight on the testimony of a physician other than the treating physician *if that physician's evidence is corroborated.* In this case, the plaintiff and his treating physician presented the jury with evidence of his painful physical condition, the effects of the herniated disk, and the complications caused by the herniated disk. His treating physician could not, however, state with any degree of medical confidence that Mr. Murchison's initial injuries from the September 1998 car accident caused the herniated disk. In fact, Dr. Bernauer himself admitted that this was a new finding. In contrast, defendants' expert witness testified that the herniated disk could not have been caused by the initial injury. Dr. Perry reasoned that it was not possible that the car accident caused injuries which did not appear on Mr. Murchison's MRI in October 1999, approximately a year after the accident, but which did appear on his March 2002 MRI. He concluded that, given this extended time frame, the change that caused the herniated disk would have had to occur sometime after the October 1999 MRI. Other evidence in the record further corroborate conclusions. For instance, Mr. Murchison was able to maintain employment, and did not seek medical attention between January 26, 2000 and February 27, 2002. Additionally, Mr. Murchison suffered other injuries between the time of his car accident and the time he was diagnosed with a herniated disk. For example, Mr. Murchison returned to his chiropractor in August of 1999 after hurting his back doing maintenance work on his mother's home.

Given this imbalanced testimony, the jury was reasonable in concluding that the timeline of Mr. Murchison's injuries prevented a finding that the September 1998 accident caused his herniated disk. The jury made a decision about the relative strength of the evidence. Because the evidence supported this decision, it was

improper for the trial court to grant the JNOV and, in doing so, substitute its own assessment of the evidence for that of the jury. We, therefore, reinstate the jury's award of damages subject to the new allocation of fault.

### Stipulated Damages

Defendants request that the JNOV reflect a credit for the $4,037.29 paid to Ellen Murchison, the cash value of her car. The record indicates that the parties stipulated the amount paid toward the value of the vehicle; however, the judgment does not recognize the credit in the award for damages. We, therefore, amend the judgment to reflect the stipulation and credit the defendants in the amount of $4,037.29.

### New Trial

Louisiana Code of Civil Procedure Article 1811(c)(2) states that "if the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise." The applicable standard of review in such a matter is whether the trial court abused its discretion. *Anthony v. Davis Lumber*, 629 So.2d 329 (La.1993). We find that the jury's verdict on damages was supported by a fair interpretation of the evidence, including Dr. Bernauer's inability to provide a confident medical opinion that the accident caused the injury, in contrast with Dr. Perry's testimony that it was implausible that Mr. Murchison's injury resulted from the September 8, 1998, accident in light of the time frame in which the ruptures occurred in relation to the accident. Where the evidence supports the jury's verdict, the grant of a new trial must be reversed. *Davis v. Witt*, 02-3102, p. 23 (La. 07/02/03), 851 So.2d 1119, 1134.

IV.

**CONCLUSION**

For the foregoing reasons, the JNOV granted for the reallocation of fault is affirmed. The JNOV granted for the reallocation of damages and the conditional new trial is reversed. We amend the judgment to reflect the stipulated credit in the amount of $4,037.29 to be applied to Ellen Murchison's property damage award. Costs of this appeal are assessed equally to defendants, Officer Timothy Richards and the City of Lake Charles, and plaintiffs, Daniel Murchison and Ellen Murchison.

**AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; AND RENDERED**.